NICHOLS *v.* JUDGE OF SUPERIOR COURT OF GRAND RAPIDS.

130  187
f147  ⁸553
130  187
149  ⁵384

1. CIRCUIT COURTS—MUNICIPAL COURTS.

Circuit curts derive their judicial powers from the Constitution, while municipal courts may be established by the legislature. Const. art. 6, § 1.

2. COURTS—LIMITATION OF POWERS.

While the constitution (article 6, §§ 13, 18) gives the legislature authority to limit the powers and duties of probate and justice' courts, no such authority is given over circuit courts.

3. SAME.

Section 8, art. 6, of the Constitution, which provides that "the circuit courts shall have original jurisdiction in all matters, civil and criminal, not excepted by the Constitution and not prohibited by law," refers to causes which may be commenced in such courts, and does not relate to the power to punish for contempts in cases properly before the court.

4. SAME—CONTEMPTS.

Section 1098, 1 Comp. Laws, limiting and specifying the acts which courts of record may punish as contempts, was enacted under the Constitution of 1835, which vested the judicial power in one Supreme Court and such other courts as the

legislature might from time to time establish, and was in-
tended to apply to the courts which the legislature was em-
powered to establish, and does not apply to circuit courts
which possess inherent and exclusive power over contempts.

5. SUPERIOR COURT—CONTEMPTS.

The legislature, by virtue of Const. art. 6, § 1, empowering it to
establish municipal courts of civil and criminal jurisdiction,
enacted a statute (Act No. 49, Pub. Acts 1875) establishing
the superior court of Grand Rapids. Sections 13 and 14 of
said act give the court power to do all lawful acts necessary
and proper to carry into effect the powers and jurisdiction
given by the act, and to do all acts which the circuit courts
may in like cases do. Held, that the superior court of Grand
Rapids has the same power to punish contempts as the circuit
courts have under the Constitution, and is not limited to the
acts specified in section 1098, 1 Comp. Laws.

6. SAME—SUBORNATION OF PERJURY.

The superior court of Grand Rapids has power to punish an
attorney for contempt of court consisting in committing the
offense of subornation of perjury in a criminal case on trial
before the court.

7. CONTEMPTS—CRIMINAL OFFENSE.

The fact that a contempt of court involves a criminal offense
does not deprive the court of jurisdiction to investigate it and
punish it as a contempt.

8. SAME—JURISDICTION—WRIT OF PROHIBITION.

The writ of prohibition is a proper remedy to determine the
jurisdiction of a court to punish for contempt in a case where
the relator makes no attack upon the form of the proceedings
or the sufficiency of the papers, but denies that the court has
any jurisdiction over the proceedings.

Petition by George E. Nichols against Richard L.
Newnham, judge of the superior court of Grand Rapids,
for a writ of prohibition to restrain certain contempt pro-
ceedings. Submitted January 7, 1902. (Calendar No.
19105.) Writ denied March 26, 1902.

October 28, 1901, the prosecuting officers of Kent county
filed 'in the superior court of Grand Rapids affidavits
charging relator with contempt of court. The affidavits
charged that the relator committed the offense of suborna-

tion of perjury in a criminal case, viz., People against Lant K. Salsbury, which was then on trial in the superior court; the relator being one of the attorneys for the prisoner. The relator made a motion in that court to quash the proceedings on the ground that the superior court had no jurisdiction in the case. This motion was denied, and an order entered that the contempt proceedings be stayed until the further order of the court, and that the prosecuting attorney "take such action through the regular channels of the criminal law as the gravity of the case and the ends of justice demand." The relator thereupon filed the petition in this court for the writ of prohibition, claiming that the superior court has no jurisdiction over contempt proceedings of this character. Three questions are presented for determination: (1) Is prohibition the proper remedy? (2) Has the superior court jurisdiction over contempt proceedings? (3) Was the superior court proceeding according to law?

*A. A. Ellis, J. B. Judkins,* and *Charles W. Nichols,* for relator.

*Ward & Brown,* for respondent.

Grant, J. (*after stating the facts*). 1. The writ of prohibition is the appropriate remedy only where the court is acting entirely without jurisdiction or in clear excess of its jurisdiction. It is not applicable where the party has a complete and adequate remedy in some other and more ordinary form. It will not lie to determine whether the petition for contempt is defective, any more than *mandamus* or *certiorari* will lie to determine whether a declaration, information, or indictment is defective. In such cases the circuit courts have full jurisdiction to pass upon the validity of the pleadings, and the proper course is by writ of error, appeal, or *certiorari*, after the proceedings are concluded. The principle is thus stated:

"The broad governing principle is that a prohibition lies where a subordinate tribunal has no jurisdiction at all to

deal with the cause or matter before it, or where, in the progress of a cause within its jurisdiction, some point arises for decision which the inferior court is incompetent to determine.   But a prohibition will not lie where the inferior court has jurisdiction to deal with the cause and with all matters necessarily arising therein, however erroneous its decision may be upon any point." Heard, Shortt, Extr. Rem. 436.

See, also, High, Extr. Leg. Rem. § 770, where it is stated that "it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law." This rule is approved in *Hudson* v. *Judge of Superior Court of Detroit*, 42 Mich. 239, 248 (3 N. W. 853), and authorities there cited.

In *People* v. *Wayne Circuit Court*, 11 Mich. 394, 404 (83 Am. Dec. 754), in a unanimous opinion, written by Justice CAMPBELL, it was said:

"As the writ of prohibition, if issuable, is only for excess of jurisdiction, it is not material, on this motion, whether the facts charged are true or not.   There seems to be no power to issue this writ to restrain any action which can be disposed of by appeal or other ordinary method of review."

The clear weight of authority sustains the rule as above stated.

The United States Supreme Court has held that:

"A writ of prohibition is never to be issued unless it clearly appears that the inferior court is about to exceed its jurisdiction.   It cannot be made to serve the purpose of a *writ of error* or *certiorari* to correct mistakes of that court in deciding any question of law or fact within its jurisdiction." *Smith* v. *Whitney*, 116 U. S. 167, 176, (6 Sup. Ct. 570).

See, also, *Ex parte Kearney*, 7 Wheat. 38.

Repeated attempts have been made in this court by application for the writ of *mandamus* and *certiorari* to determine the validity of declarations, indictments, and information; but we have for several years consistently refused to entertain them.   Only when the court below has held the pleadings bad, and quashed them, have we

entertained such applications, and then for the reason that the parties had no other remedy.   But where the court has retained jurisdiction, the party has another adequate and appropriate remedy.   The most recent decisions upon this point are *People* v. *Thompson*, 108 Mich. 583 (66 N. W. 478), where the respondent was charged with manslaughter, and the circuit court refused to quash the indictment; and *Maynard* v. *Ingham Circuit Judge*, 124 Mich. 465 (83 N. W. 102), where the relator was under indictment, which the court refused to quash on the ground that the indictment was fatally defective.   Certainly, the writ of prohibition should not be used to determine the same questions which we have refused to determine upon applications for *mandamus* and *certiorari*.

In the case now before us, relator denies that the respondent has any jurisdiction over proceedings of this character.   No attack is made upon the form of the proceedings or upon the sufficiency of the papers.   It is a clear case of denial of jurisdiction.   We are therefore of the opinion that the writ of prohibition furnishes the proper remedy to determine the jurisdiction of the court.

2. The legislature is, by the Constitution, authorized to establish municipal courts of criminal and civil jurisdiction.   Const. art. 6, § 1.   The superior court of Grand Rapids is a creation of the legislature, with such powers and jurisdiction as the legislature has seen fit to confer upon it.   We must, therefore, look to the act of the legislature establishing this court to determine what power is given it over the subject of contempts.   The statute is silent upon the subject, except as it is covered by the general and broad jurisdiction conferred upon the court.   The act gives such court original and exclusive jurisdiction over all criminal proceedings committed within the corporate limits of the city, with certain exceptions, and "power to issue all lawful writs and process, and to do all lawful acts, which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, and to do

all acts, which the circuit courts of this State, within their respective jurisdictions, may in like cases issue and do by the laws of the State of Michigan." Pub. Acts 1875, Act No. 49, §§ 13, 14 (1 Comp. Laws 1897, §§ 630, 631). Under this law the superior court is subject only to the control of the Supreme Court. It is governed by the same rules of practice as the circuit courts. Appeals are taken from it to the Supreme Court. In short, it is subject to the mandate of this court in precisely the same manner and to the same degree that the circuit courts are.

This act is similar in its provisions to the act establishing the superior court of Detroit. This court held that:

"As respects civil jurisdiction, the superior court [of Detroit] is a tribunal of the same class as the circuit courts. There are no limitations upon its powers. * * * The nature of the subjects of its jurisdiction, so far as the jurisdiction extends, is the same. It is a court of original jurisdiction, proceeding according to the course of the common law." *Wyandotte Rolling-Mills Co.* v. *Robinson*, 34 Mich. 428.

See the further reasoning of the court on page 432. See, also, *People, ex rel. Covell*, v. *Kent County Treasurer*, 36 Mich. 332.

The power to punish for contempt is essential to the due administration of the law, and to carry out the orders, decrees, and judgments of the court. If it was the intention of the legislature to limit the jurisdiction of the court over contempts to the causes specified in section 1098, 1 Comp. Laws,—a law which was enacted long prior to the adoption of the present Constitution, and when there was only one constitutional court, viz., the Supreme Court,—it would certainly have used language appropriate to express such intention. On the contrary, it expressly confers upon the court the same powers in this respect that circuit courts possess under the Constitution. It follows that, if the circuit courts are clothed with the power to punish for contempts, and are not limited to the cases provided for in the statute, which was enacted under the Constitution of 1835, then the respondent possesses the same power. The ques-

tion, therefore, is again presented to this court, Have the circuit courts of this State the inherent power to punish for contempts, or are they subject to the control of the legislature? The question is an important one in the administration of the law. If the legislature can determine what acts shall constitute contempts in the circuit courts, it can abolish the power of such courts to punish for contempts. There is no middle ground; either the courts have the absolute control, under the Constitution, over contempt proceedings, or they have only such as the legislature may see fit to confer.

The language of this court in *Langdon* v. *Wayne Circuit Judges*, 76 Mich. 367 (43 N. W. 310), is a broad statement that this power is inherent in the circuit courts of this State to the full extent that it existed in the courts of England at the common law. This was an authoritative statement of the law, but seems not to have been so considered by the entire profession. The subject was again before the court in *Re Chadwick*, 109 Mich. 588 (67 N. W. 1071). We there cited many authorities from other courts holding the same view that was expressed in the *Langdon Case*. We will not cite those authorities again, but content ourselves with this reference to them and with the citation of a few others. We found it unnecessary to pass directly upon the question, but said:

"We must not be understood as assenting to the proposition that the legislature, under the guise of regulation, may destroy a constitutional power of the courts."

The Constitution of 1835 provided that "the judicial power shall be vested in one Supreme Court, and in such other courts as the legislature may from time to time establish." Const. 1835, art. 6, § 1. The people were dissatisfied with the courts organized by the legislature, and, in the adoption of the new Constitution, made an important change by providing that:

"The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the

130 Mich.—13.

peace.   Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities." Const. 1850, art. 6, § 1.

Thus the unlimited power to create courts, given by the Constitution of 1835, was taken away by the new Constitution, and the legislature was limited to the creation of "municipal courts of civil and criminal jurisdiction." The reason for this important change in the organization of the courts is stated in *Streeter* v. *Paton*, 7 Mich. 341.

By sections 13 and 18 of article 6, the jurisdiction, powers, and duties of the probate and justices' courts may be limited and prescribed by the legislature.   No such power is found as to the circuit courts or the Supreme Court.   Section 8, art. 6, provides:

"The circuit courts shall have original jurisdiction in all matters, civil and criminal, not excepted in this Constitution, and not prohibited by law."

This refers to causes which may be instituted in those courts, and not to the practice and proceedings in those causes when once instituted.   The sole power conferred upon the legislature by that provision is to determine what causes may be instituted in the courts.   It has no reference to the power to enforce their orders, judgments, and decrees by punishment for contempts or by other proceedings.   As an illustration of this power, this court has held that the legislature may take away from a taxpayer the remedy by injunction where an adequate and complete remedy at law is provided instead.   *Eddy* v. *Township of Lee*, 73 Mich. 123 (40 N. W. 792).   But when the legislature attempted to provide a jury trial in equity cases, and make the verdict of the jury binding upon the conscience of the court, it was held in a well-considered opinion, written by Justice CAMPBELL, that the act was unconstitutional.   The learned justice used language which is applicable here:

"Our constitutions are framed to protect all rights. When they vest judicial power, they do so in accordance

with all its essentials; and, when they vest it in any court, they vest it as efficient for the protection of rights, and not subject to be distorted or made inadequate." *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274, 284 (42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438).

Nor is this all. Section 1098, 1 Comp. Laws, in regard to criminal contempts, includes every court of record. This would include the Supreme Court, and it may, with the same propriety, be urged that the legislature has control over contempts in the Supreme Court as in the circuit courts. The Constitution is silent as to both. So, also, are the debates in the constitutional convention. There were able and experienced lawyers in that convention, who were thoroughly conversant with the powers of these constitutional courts. We must assume that they were familiar with the decisions upon this subject. If they had intended a limitation upon this power, which had been so long exercised, they would certainly, either in their debates or in the Constitution itself, have left some record of such intention. This intention is further made manifest by the fact that they did make a distinction between probate and justices' courts and the circuit and supreme courts, as above shown.

The Constitution provides that "no person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution." Article 3, § 2. There is no provision in the Constitution which expressly or by implication confers upon the legislature control over this important power. Neither is there anything in it which confers upon the courts any power over the same subject in the legislature. Each was intended to be, is, and ought to be, independent of the other upon this subject. The sound and reasonable rule of law is that, in the absence of express provision in the Constitution itself, the courts of record, established by the Constitution, are clothed by that instrument with the exclusive power over contempts,—a power which has existed from time immemorial. This rule is also established by a long line of authorities.

This subject has received a careful examination and discussion in *Carter* v. *Com.*, 96 Va. 791 (32 S. E. 780, 45 L. R. A. 310), decided in March, 1899. The constitution of that State upon this subject is quite similar to our own. The legislature of that State passed an act similar to the one now under discussion.. In addition to defining contempts, it provided for a trial by jury. The act was held unconstitutional in a unanimous opinion. The court say:

"These courts do not derive their existence from the legislature. They are called into being by the constitution itself, the same authority which creates the legislature. * * * The power to punish for contempts is inherent in the courts, and is conferred upon them by the constitution by the very act of their creation. It is a trust confided and a duty imposed upon us by the sovereign people, which we cannot surrender or suffer to be impaired without being recreant to our duty."

The constitution of Georgia contains this clause: "The power of the courts to punish for contempts shall be limited by legislative acts." Article 1, § 1, par. 20. Held, that this did not confer upon the legislature the right to determine what acts shall constitute contempts, but only the power to prescribe the punishment therefor. *Bradley* v. *State*, 111 Ga. 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157). The court use this significant language:

"Where a court is established by the constitution, it is given all the powers usually possessed by all courts; and we will not construe another provision of the constitution so as to take away from the court a power which is essential to its preservation, and to its accomplishment of the purposes for which it is created, unless constrained to do so by express words or necessary implication."

The power to punish for contempts is as ancient as the courts, and antedates *Magna Charta*. Chief Justice Wilmot, nearly a century and a half ago, said of this power:

"The power which the courts in Westminster Hall have of vindicating their own authority is coeval with their first foundation and institution.    It is a necessary incident to every court of justice, whether of record or not, to fine and imprison for contempt acted in the face of the court; and the issuing of attachments by the supreme courts of justice in Westminster Hall for contempts out of court stands on the same immemorial usage which supports the whole fabric of the common law.    It is as much the *lex terræ*, and within the exception of *Magna Charta*, as the issuing of any other legal process whatsoever.    I have examined very carefully to see if I could find out any vestiges of its introduction, but can find none.    It is as ancient as any other part of the common law.    There is no priority or posterity to be found about it.    It cannot, therefore, be said to invade the common law.    It acts in alliance and friendly conjunction with every other provision which the wisdom of our ancestors has established for the general good of society.    Truth compels me to say that the mode of proceeding by attachment stands upon the very same foundation as trial by jury.    It is a constitutional remedy in particular cases, and the judges in those cases are as much bound to give an activity to this part of the law as to any other."    3 Camp. Ch. Just. 190.

To bribe or to attempt to bribe a witness in a pending case is a most serious contempt of court, and one which should be promptly dealt with.    The fact that it involves a criminal charge does not take away the jurisdiction of the court to investigate and punish it as a contempt.

Undoubtedly the legislature has the right to limit control over contempts in those courts which are of its own creation.    *Ex parte Robinson*, 19 Wall. 510.    Section 1098, 1 Comp. Laws, is first found in the Revised Statutes of 1846, and has remained without change since that time. It then applied to the courts which the legislature was authorized to create.    So, if the legislature, in creating the court in question, had used any language from which it could be inferred that, in establishing it, it intended to limit its powers over contempts, it would undoubtedly be held valid.    It did not choose to do so, but, on the contrary, it did choose to give it all the powers which were

conferred by the Constitution upon the circuit courts in all those matters intrusted to its jurisdiction.

Inasmuch as the superior court withheld proceedings until the prosecuting attorney should institute criminal proceedings in the matter, it is unnecessary to discuss the third question raised, viz., are the proceedings according to law ?

The writ is denied.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.