*In re* WHITE.

**1. JUDGES—ONE-MAN GRAND JURY.**
A judge is acting in a judicial capacity while conducting a one-man grand-jury proceeding (CLS 1952, §§ 767.3, 767.4).

**2. SAME—RECORDER'S COURT—ONE-MAN GRAND JURY.**
A judge of the recorder's court possesses the same power as circuit judges insofar as matters relating to crimes committed in the city of Detroit are concerned; hence, he functions in a judicial capacity when serving as a one-man grand jury (CL 1948, § 726.11; CLS 1952, §§ 767.3, 767.4).

**3. CONTEMPT—COMMON LAW.**
Courts of record have inherent power to hear and determine all contempts of court which the superior courts of England had at the common law.

**4. SAME—COURTS—LEGISLATURE.**
The power to punish for contempt is inherent in the court, is a part of the judicial power and cannot be taken away from constitutional courts by the legislature.

**5. CONSTITUTIONAL LAW—COURTS—JURY.**
Constitutional courts are vested with the judicial power to determine the questions of the legal sufficiency of the evidence to establish the rights of the parties at issue and to apply the law to the facts when found and such power cannot be withdrawn from them and conferred on juries.

**6. COURTS—RECORDER'S COURT—CONSTITUTIONAL LAW—CONTEMPT.**
The recorder's court of Detroit was established pursuant to the power conferred upon the legislature to establish "such other courts of civil and criminal jurisdiction, inferior to the Supreme Court," and, having been so created, became a constitutional court of record possessed of the inherent powers appertaining thereto, including the power to punish for contempt

---

REFERENCES FOR POINTS IN HEADNOTES
[4] 12 Am Jur, Contempt § 3.
[9] 24 Am Jur, Grand Jury § 47.
[9] Duty of secrecy on part of members of, or witnesses or other persons before, grand jury. 127 ALR 272.
[11] 12 Am Jur, Contempt § 15.

(140)

committed in its presence (Const 1908, art 7, § 1; CL 1948, § 726.1 *et seq.*).

7. CONSTITUTIONAL LAW—CONTEMPT.
   A legislative attempt to disqualify a recorder's court judge, while functioning as a one-man grand juror, from hearing a charge of contempt committed in his presence, is unconstitutional as exceeding the powers of the legislature (CLS 1952, §§ 767.4, 767.5).

8. GRAND JURY—WITNESSES.
   A witness before a grand jury is not on trial for any offense.

9. SAME—SECRECY.
   Secrecy is a paramount adjunct of a grand jury.

10. SAME—WITNESSES—ADVICE OF ATTORNEY—DISCRETION OF GRAND JUROR.
    A witness before a one-man grand jury is not entitled to have an attorney present in the grand-jury room to advise him whether or not he should answer a question put to him, although he may have legal counsel before or after being subpoenaed and prior to his being called as a witness, or at other times in the discretion of the grand juror (CLS 1952, § 767.3).

11. CONTEMPT—EVIDENCE—REFUSAL TO ANSWER QUESTIONS WITHOUT PRESENCE OF ATTORNEY.
    Evidence which showed witness before a judge of the recorder's court, sitting as a one-man grand jury, refused to answer questions put to him without his attorney being present with him in the grand-jury room *held,* sufficient to sustain conviction of contempt by such judge in subsequently held contempt proceeding held in open court (CL 1948, § 726.1 *et seq.;* CLS 1952, §§ 767.3–767.5).

Appeal from Recorder's Court for the City of Detroit; O'Hara (John P.), J. Submitted June 15, 1954. (Calendar No. 46,217.) Decided July 6, 1954. Rehearing denied September 8, 1954. Reversed by Supreme Court of the United States May 16, 1955.

John J. White was adjudged guilty of contempt of court for refusal to answer questions before one-man grand jury, and appeals. Affirmed.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Joseph G. Rashid, John G. Gilmore* and *Samuel J. Torina,* Assistant Prosecuting Attorneys, for the people.

*Loomis, Jones & Colden (Charles W. Jones, William L. Colden* and *George Stone,* of counsel), for petitioner White.

SHARPE, J.   On March 16, 1954, Judge John P. O'Hara, one of the judges of the recorder's court for the city of Detroit, was selected and appointed to conduct a one-man grand jury to investigate police corruption in connection with gambling.   On the following day he entered upon his duties, and the investigation commenced immediately.

In the course of the investigation, respondent, John J. White, was subpoenaed to testify before the grand jury on May 21, 1954.   It was believed that John J. White possessed information regarding police corruption that would assist the grand jury in its investigation.   John J. White was sworn as a witness and the following occurred:

"*By Mr. Rashid:*
"*Q.* Your name, witness?
"*A.* John J. White.
"*Q.* Do you have any other names or nicknames, are you known by anything else?
"*A.* I respectfully refuse to answer any and all questions hereafter unless my attorney is present with me here in the court from the beginning until the end.
"*The Court:* Your request to have your attorney here in the courtroom from the beginning to the end is denied, Mr. White.
"If there are any questions upon which you feel that you need the advice of your counsel, and it is done reasonably and not in such a way as to cause

delays, you will be permitted to go out and talk to your attorney, but your attorney will not be permitted to be present in the courtroom.

"*A.* I still think I have that right, and I still respectfully refuse to answer any and all questions. * * *

"*The Court:* Mr. White, you have been asked where do you live. Would you answer the question?

"*A.* I refuse to answer. * * *

"*Q.* How long have you lived in Detroit?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Do you drive an automobile?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* What is your business?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Do you have an interest in or do you own the Gotham Hotel?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Are you married?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Do you have a family?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Do you have an attorney?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Who is your attorney?

"*A.* I refuse to answer unless my attorney is here with me at all times.

"*Q.* Do you have a father or mother or both?

"*A.* I refuse to answer unless my attorney is here in court with me at all times.

"*Q.* Do you have any children?

"*A.* I refuse to answer unless my attorney is here with me at all times, from the beginning to the end.

"*Q.* Do you own any real estate?

"*A.* I refuse to answer unless my attorney is here with me at all times, from the beginning to the end."

Other questions of like import were asked of the witness and like responses made.

On May 24, 1954, an order to show cause was entered requiring John J. White to show cause why he should not be punished for contempt for refusal to answer any and all material questions put to him as a witness before the grand jury. The order to show cause was returnable May 28, 1954, at 9:30 a.m. On the day in question, John J. White appeared before John P. O'Hara, as recorder's judge, in response to the order to show cause. He was represented by counsel, and it was stipulated that the transcript of the testimony given by White on May 21, 1954, before the grand jury be admitted in evidence. Counsel for respondent entered an objection to the proceedings before Judge O'Hara for the reason that Judge O'Hara, as recorder's judge, was disqualified from hearing a contempt of this nature and based his objections upon CLS 1952, § 767.4 (Stat Ann 1953 Cum Supp § 28.944), which provides in part:

"Provided, That the judge conducting the inquiry under section 3 of this act shall be disqualified from acting as the examining magistrate in connection with the hearing on the complaint or indictment, or from presiding at any trial arising therefrom, or from hearing any motion to dismiss or quash any complaint or indictment, or from hearing any charge of contempt under section 5 hereof, except alleged contempt for neglect or refusal to appear in response to a summons or subpoena."

Judge O'Hara, as recorder's judge, overruled the objections and found respondent guilty of contempt and pronounced sentence. Upon application, leave

to appeal to the Supreme Court was granted. This motion presents 2 questions: (1) Is a judge of the recorder's court for the city of Detroit, sitting as a judge of the recorder's court under CLS 1952, § 767.3 (Stat Ann 1953 Cum Supp § 28.943), disqualified by the provisions of CLS 1952, § 767.4 (Stat Ann 1953 Cum Supp § 28.944), from citing a witness for contempt and, thereafter, hearing the contempt proceedings himself, where the alleged contempt arose in the course of a grand-jury investigation in the presence of him as the grand juror? (2) Is counsel for a witness called before a one-man grand jury entitled under CLS 1952, § 767.3 (Stat Ann 1953 Cum Supp § 28.943), to be present in the grand-jury room during the testimony of his client? The answer to the first question brings into focus the status of a judge sitting as a one-man grand juror. In *In re Slattery,* 310 Mich 458, we held that the judge conducting a one-man grand-jury proceeding is acting in a judicial capacity. Nor does the fact that the one-man grand jury is a judge of the recorder's court of the city of Detroit and not a circuit judge change his status and authority as a judge for the reason that judges of the recorder's court were granted the same power possessed by circuit judges insofar as matters relating to crimes committed in the city of Detroit are concerned. CL 1948, § 726.11 (Stat Ann § 27.3561), reads as follows:

"The said recorder's court shall have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this State, for crimes, misdemeanors, and offenses arising under the laws of this State, and committed within the corporate limits of the city of Detroit, except in cases cognizable by the police court of the city of Detroit, or by the justices of the peace of said city; and shall have power to issue all lawful writs and process, and to do all lawful acts which may be necessary and

proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, *and to do all acts which the circuit courts of this State, within their respective jurisdictions, may, in like cases, issue and do by the laws of this State:* Provided, That this section shall not be construed to prevent the grand jury for the county of Wayne from inquiring into and presenting indictments, as heretofore, for crimes and offenses committed within the limits of said city." (Emphasis added.)

This brings us to the principal issue in the case, namely, the power of the court to punish for contempt committed in his presence as a grand juror. We held in *Langdon* v. *Wayne Circuit Judges,* 76 Mich 358, that courts of record have inherent power to hear and determine all contempts of court which the superior courts of England had at the common law. In *Nichols* v. *Judge of Superior Court,* 130 Mich 187, 195, we said:

"The sound and reasonable rule of law is that, in the absence of express provision in the Constitution itself, the courts of record, established by the Constitution, are clothed by that instrument with the exclusive power over contempts,—a power which has existed from time immemorial. This rule is also established by a long line of authorities."

In *People* v. *Doe,* 226 Mich 5, 19, we said:

"The power to punish for contempt is inherent in the court. It is a part of the judicial power. It is as firmly vested in the constitutional courts by the Constitution as is the exercise of any other judicial power. That the exercise of the judicial power and all of it can not be taken away from constitutional courts by the legislature is settled. The question is fully considered in *Nichols* v. *Judge of Superior Court,* 130 Mich 187. See, also, *In re Chadwick,* 109 Mich 588; *Carter* v. *Commonwealth,* 96 Va 791 (32 SE 780, 45 LRA 310); *Bradley* v. *State,* 111 Ga 168

(36 SE 630, 50 LRA 691, 78 Am St Rep 157); *State v. Woodfin,* 27 NC 199 (42 Am Dec 161); *Fisher v. McDaniel,* 9 Wyo 457 (64 P 1056, 87 Am St Rep 971)."

We are in accord with the reasoning of the court of Arkansas as defined in *State* v. *Morill,* 16 Ark 384, 390, 391. We quoted with approval from the above case in *Re Chadwick,* 109 Mich 588, 599:

" 'The legislature may regulate the exercise of, but cannot abridge, the express or necessarily implied powers granted to this Court by the Constitution. If it could, it might encroach upon both the judicial and executive departments, and draw to itself all the powers of government, and thereby destroy that admirable system of checks and balances to be found in the organic framework of both the Federal and State institutions, and a favorite theory in the governments of the American people. As far as the act in question goes, in sanctioning the power of the courts to punish as contempts the "acts" therein enumerated, it is merely declaratory of what the law was before its passage. The prohibitory feature of the act can be regarded as nothing more than the expression of a judicial opinion by the legislature that the courts may exercise and enforce all their constitutional powers, and answer all the useful purposes of their creation, without the necessity of punishing as a contempt any matter not enumerated in the act. As such, it is entitled to great respect; but to say that it is absolutely binding upon the courts would be to concede that the courts have no constitutional and inherent power to punish any class of contempts, but that the whole subject is under the control of the legislative department; because, if the general assembly may deprive the courts of power to punish one class of contempts, it may go the whole length, and divest them of power to punish any contempt.' "

In *Bielecki* v. *United Trucking Service,* 247 Mich 661, 666, and *Attorney General, ex rel. Cook,* v. *O'Neill,* 280 Mich 649, 657, the Court quotes with approval from *Kiley* v. *Chicago, M. & St. P. R. Co.,* 138 Wis 215, 226 (119 NW 309, 120 NW 756), and *Thoe* v. *Chicago, M. & St. P. R. Co.,* 181 Wis 456, 462, 466 (195 NW 407, 29 ALR 1280):

" ' "The powers of the court and jury in the administration of the law in these respects were distinct and well defined at the time of the adoption of our Constitution and became vested in the court and jury by its provisions. They cannot be abrogated or modified by legislative action to the extent of impairing, in any degree, the judicial power. Under the Constitution courts have become vested with the judicial power to determine the questions of the legal sufficiency of the evidence to establish the rights of the parties at issue and to apply the law to the facts when found, and this power cannot be withdrawn from them and conferred on juries." *   *   *

" 'The people of the State of Wisconsin, through the Constitution ordained by them, have conferred upon the courts of this State the judicial power, which includes the power finally to construe, interpret, and apply the law in private as well as public matters. The Constitution having confided this high prerogative to the courts, they would be plainly derelict in their duty if upon any pretense whatever they permitted the powers so confided to them to be exercised by other than judicial officers.' "

Article 7, § 1, Michigan Constitution of 1908, provides that the judicial power shall be vested in the courts therein enumerated "and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law." When the legislature, by the enactment of CL 1948, § 726.1 *et seq.* (Stat Ann § 27.3551 *et seq.*), provided for the recorder's court of the city of Detroit, it acted in the exercise of that constitu-

tionally conferred power to establish "other courts." Having acted thus, the court so created under constitutional authority and provision, became a constitutional court of record, possessed of the inherent powers appertaining thereto, equally as in the case of the circuit and other courts enumerated in the Constitution. It follows that the legislature has no power to deprive a constitutional court, such as a circuit court, of its power to punish for contempt committed in its presence. And, inasmuch as the recorder's court of the city of Detroit possesses all the powers given circuit courts in the State of Michigan, "and to do all acts which the circuit courts of this State, within their respective jurisdictions, may, in like cases, issue and do by the laws of this State," it also follows that the legislature has no power to deprive a judge of the recorder's court of its power to punish for contempt committed in its presence. The conclusion is inevitable that when the legislature enacted CLS 1952, § 767.4 (Stat Ann 1953 Cum Supp § 28.944), in which it attempted to disqualify the grand juror from hearing a charge of contempt arising under CLS 1952, § 767.5 (Stat Ann 1953 Cum Supp § 28.945), it acted unconstitutionally and exceeded its powers in so doing.

It is also contended by respondent that a witness called before the grand jury is entitled to have his counsel present in the courtroom at the time the witness testifies before the grand jury. This claim arises out of CLS 1952, § 767.3 (Stat Ann 1953 Cum Supp § 28.943), which provides:

"Any person called before the grand jury shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt."

Judge O'Hara, the grand juror, interpreted the act in question to mean that a witness might consult with legal counsel, but did not intend that a witness had the right to have his lawyer sit in the courtroom while the witness was testifying. In coming to our conclusion upon this issue we take into consideration that a witness before a grand jury is not on trial for any offense and that secrecy is a paramount adjunct of a grand jury. In *People* v. *Lauder,* 82 Mich 109, it was held that a witness testifying before a grand jury had no right to have the assistance of counsel.

We do not think that the legislature intended, in enacting the above act, that a witness not on trial for any offense was entitled to have an attorney at his elbow to advise him whether or not he should answer a question put to him. We are of the opinion that the legislature intended that a witness was entitled to have legal counsel before or after being subpoenaed and prior to his being called as a witness, or at such other times in the discretion of the grand juror. We hold that a witness legally called to testify before a grand jury is not entitled to have an attorney with him when he is so testifying. There being competent evidence to sustain the conviction, the judgment is affirmed.

Butzel, C. J., and Carr, Bushnell, Boyles, Dethmers, and Kelly, JJ., concurred with Sharpe, J.

Reid, J., concurred in the result.