McCormack, J.
(dissenting). The majority holds that the governmental tort liability act’s (GTLA)[1] grant of immunity to governmental agencies from “tort liability,” as referred to in MCL 691.1407(1), applies to civil contempt. The majority’s analysis rests entirely on two closely related propositions. First, the GTLA grants immunity from legal responsibility arising from a tort. I agree. Second, all noncontractual civil wrongs, including civil contempt, are torts. I respectfully disagree. Civil contempt does not sound in tort, and contempt sanctions of any kind simply do not impose tort liability. Furthermore, and not surprisingly, the GTLA does not provide any basis for concluding that our Legislature intended to grant immunity for contempt of court. Nor does the contempt statute, MCL 600.1701, provide any *407 basis for concluding that governmental actors are not subject to all of its remedies. Because I believe that the majority confuses legal categories, and in light of the plain meaning of both the GTLA and the contempt statute, I respectfully dissent and would affirm the judgment of the Court of Appeals.
I. CIVIL LIABILITY
A. AN ABBREVIATED TAXONOMY OF “CIVIL WRONGS”
Very generally speaking, there are two categories of legal wrongs that may result in civil liability. One category encompasses acts that violate a personal right, which includes the common-law subjects of property, tort, contract, trust, and restitution. A second category encompasses acts not against the person, but rather against the sovereign, or acts against interests the sovereign deems worthy of protection. These acts are the subject of environmental law, securities law, and consumer law, to name a few. These examples are hardly exhaustive. But they suffice to show that the legal system imposes liability in a wide variety of contexts, either to address harms committed against citizens or, instead, to enforce rules imposed by the state or its subdivisions.
The majority begins its analysis by examining case-law and legal dictionaries in search of a definition of the term “tort.” It ultimately articulates this one: “a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages.”[2] But this definition offers little guidance, first because “civil wrong” is itself a term of art and, *408 moreover, because, as noted in the previous paragraph, there are many noncontractual civil wrongs that are not torts.
The English legal tradition recognized courts of “law,” the Court of Queen’s Bench, and “equity,” the Court of Chancery. Though complementary, the two operated separately and independently.[3] Our modern system has abolished these distinctions, but has adopted aspects of and rules from both.[4] Civil liability sounding in neither contract nor tort is not uncommon. Breach of trust, for example, has its roots in the rules of equity and the Court of Chancery, separate and distinct from both contract and tort.[5] A trustee relationship imposes fiduciary duties, the breach of which results in liability.[6] Though trust law can well be understood as a half sibling of contract law, it cannot be reduced to contract. A breach of trust stems not from the violation *409 of a bargained-for-exchange, but rather from duties arising out of the special relationship of the parties. That is, it was not considered a tort, and at common law the only available remedy was in equity. Another example is provided by the law of restitution and unjust enrichment. It is based on principles of equity; it sounds in neither contract nor tort, yet it shares characteristics of both. Restitution recognizes the need for compensation in instances when the receipt and retention of a benefit by a person without payment made to the person providing that benefit would result in injustice.[7] Consider also easements by prescription. An action to establish a prescriptive easement certainly cannot be recognized as based in contract because permissive use destroys the claim.[8] Nor is it based in tort. Like actions to quiet title, actions for a prescriptive easement are equitable in nature.[9] State and governmental entities are immune from prescriptive easements not because of the broad language of the GTLA. Rather, that immunity is conferred by an exception to the statute of limitations for actions for recovery or possession of real property.[10]
Our legal system imposes liability in many other contexts as well, even apart from the criminal justice system. A familiar example would be civil infractions. A parking ticket results in a legal obligation to pay money. But a parking infraction is not a tort, a breach of contract, or a crime. It is simply a municipal ordinance *410 violation.[11] And perhaps the most essential power of any government — the power to tax — imposes legal obligations. Yet, again, tax liability does not sound in either tort or contract.[12] A comprehensive discussion of these two subjects is beyond the scope of this dissent. But both civil infractions and tax law impose civil liability in ways different from tort or contract. The obligations they impose serve to vindicate the interests of the sovereign. They do not serve to vindicate personal rights; they are not mechanisms for righting private wrongs or securing compliance to a mutual obligation.
B. THE NATURE OF TORTS
William Prosser once observed that “a really satisfactory definition of a tort is yet to be found. The numerous attempts which have been made to define the term have succeeded only in achieving language so broad that it includes other matters than torts, or else so narrow that it leaves out some torts themselves.”[13] Fundamentally, a tort action protects a person’s interest in a range *411 of personal interests: physical security and autonomy;[14] emotional security and other intangible interests, such as privacy and reputation;[15] and personal economic security and opportunity.[16] While tort liability may lead to relief in the form of compensatory money damages, this is not the only remedy available for tortious conduct. A tortfeasor may be restrained by an injunction, and may be liable for restitution, punitive, or nominal damages.
Moreover, compensatory damages are not unique to tort law. Compensatory damages are a common remedy in actions based in contract, for example, as expectation or consequential damages. Or for an example closer to contempt, our Legislature has even provided for compensatory damages for victims of crime in the Crime Victim’s Rights Act.[17] In short, tort liability does not hinge on an award of compensatory damages, and the availability of compensatory damages is not unique to tort law.
Rather, the sine qua non of a tort is the breach of a duty owed to a fellow citizen. And, although tort liability has been extended to some extent in recent decades with increased reliance on doctrines like public nui- *412 sanee, classic tort liability is rooted in the common-law duties all citizens owe to one another.[18]
C. CONTEMPT OF COURT
Contempt of court is altogether different. It stems from a violation of an obligation owed not to any person, but to the court itself. Contempt does not serve to protect private rights; it serves to protect the power of the courts. Contempt has been described as a “power of self-defense,” intended to sanction “those who interfere with the orderly conduct of [court] business or disobey orders necessary to the conduct of that business ... .”[19] This purpose — to protect the power of the judiciary — is evidenced not only by modern cases, but also by contempt’s historical roots. It comes as no surprise that contempt of court is not discussed in any leading tort treatise, nor is it discussed within the comprehensive framework of tort law by the Restatement, two observations which further reveal the majority’s error.[20] The common law did not consider contempt a tort, and the Queen’s Bench would not have understood it as such. Rather, contempt of court was viewed at common law as *413 criminal in nature.[21] While modern cases distinguish civil .contempt,[22] and though indemnification damages in a contempt proceeding may resemble tort damages in certain respects, labeling contempt a tort is to ignore fundamental differences between the two.
Implicit in the majority’s analysis is that all legal wrong fits neatly into one of three categories: criminal, contractual, or tortious. The law is not so neat. Modern Michigan cases have recognized contempt proceedings as “quasi-criminal” in nature.[23] Nor is Michigan alone. The United States Supreme Court has described contempt proceedings as “sui generis— neither civil actions nor prosecutions for offenses, within the ordinary meaning of those terms — and exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions.”[24] They “are neither wholly civil nor altogether criminal.”[25] Rather, an act of contempt “may partake of the characteristics of both.”[26]
*414 As this discussion demonstrates, courts have often struggled to classify contempt as anything but sui generis. While modern cases label contempt as either “civil” or “criminal,” this distinction does not lead to the conclusion that civil contempt is a tort. The distinction between criminal and civil contempt has not always been clear,[27] but the dividing line has focused on the nature of the punishment or sanction.[28] But no matter the label, even “if the case is civil and the punishment is purely remedial, there is also a vindication of the court’s authority.”[29] Though different labels may be applied, at its core a contempt action is fundamental to a court’s power to effectuate its orders.[30]
D. A TORT BY ANY OTHER NAME?
A more apt comparison for contempt of court can be found not in tort law, but instead in the various legal sanctions provided by our court rules. Like the contempt power, these sanctions serve to enforce the orderliness of court proceedings. Sometimes, courts may impose the equivalent of compensatory damages for a violation of the court rules, such as when a party who files vexatious pleadings or makes vexatious discovery demands is sanctioned by having to pay the other party’s costs. But these are not tort damages, nor are they unavailable against municipal litigants under the GTLA.
*415 The majority cites several cases in which courts have drawn analogies between civil contempt and tort in support of its conclusion that civil contempt is a tort.[31] These cases do not support the majority’s conclusion; they suggest only that a civil contempt petition is analogous to a tort claim. But the majority offers these cases in support of the separate proposition that civil contempt is a tort.[32] Analogies are by definition comparable, but not interchangeable. They are related, but they are not equivalent. The majority is correct that one analogous feature of these two distinct civil wrongs is that both can result in compensatory liability. But the similarity ends there. Tort law imposes a duty to avoid harmful conduct deemed tortious. Contempt law imposes a duty to obey the court. These duties are fundamentally different, as are their origins, and the purposes they serve.
Even assuming, purely for argument’s sake, that a similarity to tort were sufficient to subject civil contempt to the same immunity rules as tort, I believe that the Legislature has foreclosed that immunity here. For while I agree with the majority that contempt sanctions are not among the five statutory exceptions to the *416 GTLA’s grant of immunity, the GTLA does not apply in cases in which a separate statute gives rise to direct evidence that the Legislature intended to waive the state’s immunity to liability.[33] The contempt statute specifically includes “[a]ll attorneys, counselors, clerks, registers, sheriffs, coroners, and all other persons in any manner elected or appointed to perform any judicial or ministerial services”[34] as those subject to the court’s contempt power. By specifically including these governmental actors as among those who may be deemed contemnors, the Legislature has waived any claim that they are immune from contempt liability. Further, the contempt statute does not distinguish among those parties to which its various sanctions, including indemnification damages, apply.
II. STATUTORY INTENT
I believe the majority’s premise that contempt is a tort leads it to gloss over the relevant statutory texts too quickly. The express language of both the GTLA and the contempt statute undermines the majority’s conclusion that the GTLA is intended to grant governmental *417 agencies immunity from compensatory contempt sanctions. The GTLA does not refer to contempt explicitly or implicitly, and, likewise, the contempt statute does not refer to governmental immunity in any way. Given that contempt remedies are not generally understood to be “tort” damages, surely the Legislature would have made its intentions clear if it had sought to include contempt remedies in the immunity statute. As previously noted, certain governmental actors are specifically included as within the scope of the contempt statute,[35] establishing that governmental actors can be held in contempt. Further, the compensatory remedy of the contempt statute does not limit against whom indemnification damages apply.[36]
The GTLA itself demonstrates that the Legislature knew how to use different language when it intended to grant immunity beyond tort liability. MCL 691.1407(1), which the majority relies on, states that “a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.”[37] In MCL 691.1407(6), however, the GTLA does not use the term “tort liability,” but instead states that “[a] guardian ad litem is immune from civil liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as guardian ad litem.”[38] Because “liability for an injury to a person or damage to property” encompasses tort liability, the Legislature’s use of the term “civil liability” in § 1407(6) suggests a broader scope of immunity than that found in § 1407(1). *418 When the Legislature uses different words in the same statute, they should be assigned different meanings whenever possible.[39]
The codification of the contempt power underscores the same conclusion. The Legislature did not use the word “tort” to describe the conduct it prohibits in the contempt statute. It did not use the word “tort” to describe the available sanctions. And there is more support: The Legislature did not include contempt in chapter 29 of the Revised Judicature Act, “Provisions Concerning Specific Actions,”[40] a chapter codifying miscellaneous tort actions including malpractice,[41] defamation,[42] and damage or waste to land.[43] Rather, contempt is given its own chapter, in keeping with its unique nature.[44]
Further, refusing to apply the GTLA here will not negatively impact the functioning of governmental agencies because governmental actors, I believe, generally avoid behavior “directly tending to interrupt [court] proceedings,”[45] do not habitually engage in “willful neglect or violation of duty,”[46] and generally refrain from “disobeying any lawful order, decree, or process of the court.”[47] Even given the egregious facts of this case, respondent vigorously contests whether a *419 contempt finding was proper. Respondent argues that there was no willful violation of the probate court order and, assuming there was, that indemnification damages were nevertheless improper because there was no causal link between the contempt and Bradley’s suicide.[48] These would be issues worthy of consideration on remand if my position prevailed and they provide additional hurdles that might prove fatal to petitioner’s claim for indemnification damages.
III. THE INHERENT POWER OF THE JUDICIARY
Finally, the majority’s analysis concludes that the GTLA’s immunity grant to contemnors is not an infringement on the court’s inherent contempt power because the GTLA only applies to the contempt remedies provided by the Revised Judicature Act,[49] but not to the judiciary’s “inherent contempt power,” which the majority concludes is limited to coercive fines and imprisonment. While my analysis does not rest on this distinction, I believe the majority fails to satisfactorily explain why any particular remedy, and indemnification damages in particular, is somehow outside the Court’s inherent contempt power, except, perhaps, because this sanction is codified in the Revised Judicature Act.[50] That codification would render the remedy not part of the court’s inherent power is inconsistent with both this Court’s past pronouncement that contempt statutes are “merely declaratory of what the law was before *420 its passage,”[51] and, as the majority concedes,[52] with the fact that indemnification damages have been recognized by Michigan contempt statutes dating back well before adoption of the 1963 Constitution.[53] And while it has been recognized that the Legislature can regulate the court’s exercise of the contempt power, that regulation cannot abridge or, crucially, curtail the power.[54] An intrusion of that nature into the courts’ inherent powers would violate the separation-of-powers principle.[55] But the majority fails to acknowledge this principle, or explain how the removal of an entire class of sanctions is merely regulatory and not instead a curtailment.[56] If, counterfactually, the GTLA expressly *421 prohibited indemnification damages as a remedy for contempt of court, that restriction would be, at the least, constitutionally questionable. The very fact that legislative restrictions on judicial powers raise constitutional questions is another reason not to interpret the GTLA as having done so. It is well established that courts should construe acts of the Legislature to avoid constitutional questions whenever possible.[57]
IV CONCLUSION
I agree with the majority’s basic premise that “tort liability” refers to “legal responsibility arising from a tort.”[58] Because I conclude that contempt of court is not a tort, no matter what remedy for contempt is imposed, I would not interpret the GTLA as granting immunity to governmental agencies from contempt sanctions under MCL 600.1721. Whether petitioner here can demonstrate that respondent’s conduct was a legal cause of Stephen Bradley’s death, whether his death constitutes an “actual loss or injury” to petitioner within the *422 meaning of MCL 600.1721, or, as a threshold matter, whether a finding of contempt here was proper, are issues not before us.
The practical import of this case is probably limited, given that civil contempt is fairly rare and that the facts of a case giving rise to the possibility of indemnification damages for civil contempt are rarer still. But the underlying principles are important. As a matter of good doctrinal bookkeeping, civil contempt is not the same as tort, and civil contempt penalties are not the same as tort liability. Although the majority is correct that, as it happens, petitioner seeks indemnification under the contempt statute after having been denied a claim for wrongful death, the majority’s holding will also apply to future cases in which, unlike here, a governmental actor’s contemptuous conduct has no obvious tort analogue simply because the sanction can be viewed as compensatory.
But even beyond getting the basic legal categories here correct, this Court should be hesitant to cede the judiciary’s power to impose exceptional remedies in those exceptional cases in which they may be warranted for failure to heed judicial orders. This Court should, instead, safeguard the power of the judicial branch. No other branch will.
I would affirm the Court of Appeals and remand this case to the probate court for further proceedings.

 MCL 691.1401 et seq.

 Ante at 384.

 The majority’s historical analysis, attempting to illustrate that at common law all civil wrongs were either contract or tort, relies only on in personam actions brought in courts of law and thereby misses the larger point. See ante at 381-382 n 31, quoting Sinclair v Brougham, [1914] AC 398 (HL), 415 (1914) (Viscount Haldane, LC) (“[S]o far as proceedings in personam are concerned, the common law of England really recognizes . . . only actions of two classes, those founded on contract and those founded on tort.”) (emphasis added). As a result, the majority’s analysis misses an important point. Contempt is not a private wrong, but rather a wrong against the sovereign.

 See 1963 Const, art 6, § 5 (“The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished. The office of master in chancery is prohibited.”); MCL 600.223(4) (stating that this Court has the authority to promulgate and amend general rules governing practices and procedure in this Court and all other courts of record, including but not limited to the authority “to abolish, as far as practicable, distinctions between law and equity”).

 See 1 Restatement Trusts, 3rd, Introductory Note, p 3; Seipp, Trust and fiduciary duty in the early common law, 91 BU L R 1011 (2011).

 See MCL 700.7901.

 1 Restatement of Restitution and Unjust Enrichment, 3d, § 1, p 3; Sherwin, Restitution and equity: An analysis of the principle of unjust enrichment, 79 Tex L R 2083 (2001).

 Banach v Lawera, 330 Mich 436, 440-442; 47 NW2d 679 (1951).

 Mulcahy v Verhines, 276 Mich App 693, 698; 742 NW2d 393 (2007).

 See MCL 600.5821(1) and (2).

 See MCL 600.8701 et seq.

 But consider the Internal Revenue Code’s treatment of deductions for business expenses. 26 USC 162. The Code recognizes that “ordinary and necessary expenses” are, generally, deductible. 26 USC 162(a). These expenses include tort liabilities, if incurred in the ordinary course. See 26 USC 461(h)(2)(C) (discussing the timing these deductions). However, a “fine or similar penalty paid to a government for the violation of any law” is not deductible. 26 USC 162(f). The code treats tort liability distinctly from other civil penalties, recognizing the different policy rationales driving both. See Tank Truck Rentals, Inc. v Comm’r of Internal Revenue, 356 US 30; 78 S Ct 507; 2 L Ed 2d 562 (1958). This example underscores the important difference between civil wrongs against persons and those against the sovereign.

 Prosser & Keeton, Torts (5th ed), § 1, pp 1-2. The majority’s definition of a tort — anything that cannot be classified as either breach of contract or a crime — falls within the first class of error Prosser describes.

 See Tinkler v Richter, 295 Mich 396, 401; 295 NW 201 (1940) (civil assault and battery); Giddings v Rogalewski, 192 Mich 319, 326; 158 NW 951 (1916) (civil trespass).

 See Roberts v Auto-Owners Ins Co, 422 Mich 594, 597-598; 374 NW2d 905 (1985) (discussing, without deciding, whether intentional infliction of emotional distress is a viable claim in Michigan); Pallas v Crowley, Milner & Co, 322 Mich 411, 416; 33 NW2d 911 (1948) (right of privacy); Mitan v Campbell, 474 Mich 21, 24; 706 NW2d 420 (2005) (defamantion).

 See Cedroni Assoc, Inc v Tomblinson, Harbum Assoc, Architects & Planners, Inc, 492 Mich 40, 45; 821 NW2d 1 (2012) (tortious interference with a business expectancy); Good Housekeeping Shop v Smitter, 254 Mich 592, 596-597; 236 NW 872 (1931) (unfair competition and common-law trademark).

 MCL 780.751 et seq.

 See 2 Dobbs, The Law of Torts (2d ed), § 251, p 1 (“No defendant is liable for negligence unless he is under a legal duty to use care.”); see also Elbert v City of Saginaw, 363 Mich 463, 475; 109 NW2d 879 (1961) (stating that when there is no legal duty, there can be no actionable negligence, and that “the sine qua non of negligence law [is] the requirement (a ‘duty’) that people in an ordered society must conform to a certain standard of conduct in their relations one with another”).

 Young v United States ex rel Vuitton et Fils SA, 481 US 787, 820-821; 107 S Ct 2124; 95 L Ed 2d 740 (1987) (Scalia, J., concurring); see also In re Contempt of Robertson, 209 Mich App 433, 436; 531 NW2d 763 (1995) (stating that contempt is a “wilful act, omission or statement that tends to . . . impede the functioning of a court”).

 See, e.g., Dobbs, The Law of Torts (2d ed); Prosser & Keeton, Torts (5th ed); Restatement Torts, 2d; Restatement Torts, 3d.

 In Blackstone’s Commentaries on the Laws of England, contempt of court is discussed as a public wrong, or crime. See 4 Blackstone, Commentaries on the Laws of England (Jones ed., 1976), pp **286-287 (discussing contempt as a crime and unique in that it could be punished by summary conviction, without trial by jury).

 See Gompers v Bucks Stove & Range Co, 221 US 418, 441; 31 S Ct 492; 55 L Ed 797 (1911).

 Porter v Porter, 285 Mich App 450, 456; 776 NW2d 377 (2009), citing In re Contempt of Dougherty, 429 Mich 81, 90; 413 NW2d 392 (1987).

 Myers v United States, 264 US 95, 103; 44 S Ct 272; 68 L Ed 577 (1924). Other cases have cast off the qualifier “quasi” altogether. See Gompers v United States, 233 US 604, 610; 34 S Ct 693; 58 L Ed 1115 (1914) (“If [acts of contempt] are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in the English speech.”).

 Gompers, 221 US at 441.

 Id. (citation and quotation marks omitted).

 For a thorough historical analysis, consider Dudley, Jr., Getting beyond the civil/criminal distinction: A new approach to the regulation of indirect contempts, 79 Va L R 1025 (1993).

 Gompers, 221 US at 441; see also In re Contempt of Dougherty, 429 Mich at 91-93, discussing Gompers, 221 US 418.

 Gompers, 221 US at 443.

 An important distinction in criminal contempt is the right to tried hy jury before the sanction may be imposed. Bloom v Illinois, 391 US 194, 209; 88 S Ct 1477; 20 L Ed 2d 522 (1968).

 Ante at 394 n 61, citing Dodson v Dodson, 380 Md 438, 453; 845 A2d 1194 (2004); Parker v United States, 153 F2d 66, 70 (CA 1, 1946); Vuitton et Fils SA v Carousel Handbags, 592 F2d 126, 130 (CA 2, 1979); Thompson v Cleland, 782 F2d 719, 722 (CA 7, 1986).

 In particular, the majority insists that petitioner’s contempt of court claim in this case simply “recast[sj” her immunity-barred wrongful death action. This misses the core point. Neither a contempt of court petition nor a wrongful death suit is a disguise for the other. They are separate legal theories, serving separate purposes, predicated on different wrongs. That, under the facts of this case, both may lead to a similar remedy does not make them the same. Even if Michigan did not recognize a wrongful death action, hypothetically, respondent here could still have been held in contempt for failing to carry out a lawful court order if petitioner could prove the elements of contempt.

 The majority’s discussion of waiver is incomplete. It correctly notes the five statutory GTLA exceptions, but does not meaningfully address the other areas in which the Legislature has waived immunity. “[T]here are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act.” Mack v Detroit, 467 Mich 186, 195; 649 NW2d 47 (2002), citing MCL 37.2103(g), MCL 37.2202(a), and Manning v City of Hazel Park, 202 Mich App 685, 699; 509 NW2d 874 (1993) (recognizing that governmental immunity is not a defense to claims brought under the Civil Rights Act because the act specifically includes the state and its political subdivisions and their agents as employers covered by the act. See also the Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. (specifically including the state and its political subdivisions as persons subject to the provisions of the act at MCL 37.1103(g)).

 MCL 600.1701(c) (emphasis added).

 Id.

 See MCL 600.1721.

 Emphasis added.

 Emphasis added.

 See 2A Singer & Singer, Sutherland Statutory Construction (7th ed), § 46:6, p 252 (“The use of different terms within similar statutes generally implies that different meanings were intended.”).

 MCL 600.2901 et seq.

 MCL 600.2912.

 MCL 600.2911.

 MCL 600.2919.

 MCL 600.1701 et seq.

 MCL 600.1701(a) and (b).

 MCL 600.1701(c).

 MCL 600.1701(g).

 Indemnification damages under MCL 600.1721 require a causal link: “If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant.” (Emphasis added.)

 MCL 600.1715 and MCL 600.1721.

 See MCL 600.1721. But also codified are coercive civil contempt and criminal contempt. MCL 600.1715.

 In re Chadwick, 109 Mich 588, 600; 67 NW 1071 (1896) (citation and quotation marks omitted); see also In re Huff, 352 Mich 402, 415; 91 NW2d 613 (1958) (“There is inherent power in the courts ... independent of, as well as by reason of statute, which is merely declaratory and in affirmation thereof, to adjudge and punish for contempt....”).

 Ante at 394 n 62.

 See 1846 RS, ch 121, § 21, the original predecessor of MCL 600.1721.

 In re Chadwick, 109 Mich at 599-600.

 Id. at 600 (stating that if the Legislature could curtail the courts’ jurisdiction to hear contempt cases “it might encroach upon both the judicial and executive departments, and draw to itself all the powers of government, and thereby destroy that admirable system of checks and balances to be found in the organic framework of both the Federal and State institutions, and a favorite theory in the governments of the American people”) (citation and quotation marks omitted).

 The power to curtail the judiciary’s inherent contempt power is with this Court, not the Legislature. 1963 Const, art 6, § 4 (“The supreme court shall have general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court.”). The majority relies on Langdon v Judges of Wayne Circuit Court, 76 Mich 358, 367; 43 NW 310 (1889), for the proposition that the GTLA merely “ ‘regulate[s] the mode of proceeding and prescribe[s] what punishment may be inflicted.’ ” Ante at 395 n 65. Langdon, however, addressed only the question of whether the circuit court had jurisdiction, as granted by statute, to hold the defendant in criminal contempt. Id. at 374 (“The *421 assignments of error do not raise any question of irregularity in the proceedings, but solely the question of jurisdiction, and this is the only question we are called upon to decide.”). Whether removal of an entire category of available contempt sanctions is regulatory was simply not a question before the Langdon Court. The majority’s reliance on Nichols v Judge of Superior Court of Grand Rapids, 130 Mich 187; 89 NW 691 (1902), is similarly misplaced. See ante at 395 n 65. The Nichols Court did not pronounce that the Legislature had broad power to prescribe contempt punishments. Rather, the Nichols Court warned that this Court’s past jurisprudence, including Langdon, “must not be understood as assenting to the proposition that the legislature, under the guise of regulation, may destroy a constitutional power of the courts.” Nichols, 130 Mich at 193 (citation and quotation marks omitted).

 See In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38, 490 Mich 295, 307; 806 NW2d 683 (2011) (“[Cjourts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.”) (citation and quotation marks omitted).

 Ante at 385.