PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* DONOVAN.

1. NUISANCE—INJUNCTION—INTOXICATING LIQUORS.
   The State has power to authorize proceedings in equity to suppress as a nuisance the maintenance of a place where intoxicating liquors are sold in violation of law.[1]

2. STATUTES—TITLE—SUFFICIENCY.
   The title of Act No. 272, Pub. Acts 1915, as amended by Act No. 337, Pub. Acts 1917, and Act No. 112, Pub. Acts 1919, providing for the closing, as nuisances, of buildings used for certain illegal purposes, *held*, sufficiently broad to embrace its provisions; they being germane to the object expressed therein.[2]

3. SAME—CONSTRUCTION—TEMPORARY INJUNCTION—CONTINUANCE.
   Section 2 of said act is construed to mean that, while a suit to declare a certain place a nuisance because of violation of law is pending, on the application of plaintiff for a temporary injunction, if defendant shall ask for a continuance, and if it shall have been made to appear that the violation of law complained of is a nuisance, so that, if proven, it will justify a decree, the temporary injunction prayed for shall be granted as a matter of course. BIRD, FELLOWS, and WIEST, JJ., dissenting.[3]

4. SAME—MISCONSTRUCTION OF STATUTE REQUIRES NEW TRIAL.
   Where, through a misconstruction of said statute, defendant was forced to a hearing on the main issue on four days' notice, the decree is reversed and the case remanded for a hearing on the merits; the practice prescribed therefor in suits in chancery to be followed.[4]

Appeal from Wayne; Hart (Ray), J., presiding. Submitted June 4, 1924. (Docket No. 22.) Decided October 6, 1924.

Bill by the people of the State of Michigan, on the relation of Andrew B. Dougherty, attorney general,

---

[1]Intoxicating Liquors, 33 C. J. § 62; [2]Statutes, 36 Cyc. p. 1036; [3]Intoxicating Liquors, 33 C. J. § 62; [4]Id., 33 C. J. § 414.

against Angela Maria Donovan and another to abate a public nuisance.    From a decree for plaintiff, defendants appeal.    Reversed and remanded.

*Andrew B. Dougherty,* Attorney General, *Thomas J. Green, Carl D. Mosier,* and *Donald W. Sessions,* Assistants Attorney General, for plaintiff.

*Beaumont, Smith & Harris* and *Percy J. Donovan,* for defendants.

FELLOWS, J. (*dissenting*).    This proceeding was instituted by the attorney general under Act No. 272 of the Public Acts of 1915, as amended by Act No. 337 of the Public Acts of 1917, and Act No. 112 of the Public Acts of 1919 (Comp. Laws Supp. 1922, § 7781 *et seq.*).    The property came to defendant Donovan with considerable other property in partition proceedings had during the settlement of her mother's estate shortly before these proceedings were instituted.    There is no claim that she or her agent had any knowledge or notice that intoxicating liquors were being there sold.    The sole question presented upon this record is the validity of the legislation, defendant's counsel announcing in the court below that in view of the provision contained in section 2 of the act of 1919 and to which we shall presently refer he could not safely ask for an adjournment of the hearing.

If doubt had existed as to the power of the State to authorize proceedings in equity to suppress as a nuisance the maintenance of a place where intoxicating liquors were sold in violation of law, that doubt was ended by the decision of the Supreme Court of the United States in *Mugler* v. *Kansas,* 123 U. S. 623, 670 (8 Sup. Ct. 273).    We shall not consider any other of the numerous cases sustaining the same view. A valuable note reviewing many authorities will be

found in 5 A. L. R. 1474.     In the *Mugler Case,* however, it was said:

"The statute is prospective in its operation, that is, it does not put the brand of a common nuisance upon any place, unless, after its passage, that place is kept and maintained for purposes declared by the legislature to be injurious to the community.     Nor is the court required to adjudge any place to be a common nuisance simply because it is charged by the State to be such.     It must first find it to be of that character; that is, must ascertain, in some legal mode, whether since the statute was passed the place in question has been, or is being, so used, as to make it a common nuisance."

We shall dispose of the objections here urged against the act and only the objections here urged.     They are, as we understand counsel's brief, as follows:

(1) That the title to the act is not broad enough to embrace its provisions; that the portion of section 2 providing:

"Four days' notice in writing shall be given the defendant of the hearing of the application, and if then continued at his instance, the writ as prayed shall be granted as a matter of course,"

is invalid.

(2) Because the notice is so short as to deprive the defendant of due process of law, and

(3) Because directing the issuance of the writ prayed for upon granting defendant's application for continuance deprives the court of the exercise of the judicial power and is an attempted exercise of that power by the legislature.

1. The title of the act of 1915 was amended by the act of 1917 and again amended by the act of 1919. As it now stands it is comprehensive and we are unable to detect any provisions of the act that are not germane to its object as expressed in the title, at least none has been pointed out to us.     This objection is without merit.

2. It is insisted that four days' notice of the hearing gives so short a time to prepare for the hearing as to deprive the property owner of due process of law.    It is pointed out that the act by its terms applies to the innocent owner as well as the guilty one, and that very valuable property may be involved and much more time may be needed for preparation.    But the time fixed is the same as that fixed for hearing motions in the circuit court (Circuit Court Rule No. 15), and this court hears motions on like notice (Supreme Court Rule No. 28).    Many mandamus cases and motions involving very large interests are heard by this court on four days' notice.    Eliminating, as we shall, the objectionable provisions as to continuances for other reasons, we are not persuaded that the property owner is deprived of his property without due process of law.

3. This brings us to the meritorious question in the case.    By the mandate of the act the courts are left no discretion in granting a continuance on the application of the defendant, in fixing the terms upon which it shall be granted.    The legislature fixes and assumes to positively direct the court the judgment it shall enter, the order it must make.    No matter how meritorious the application may be, occasioned by sickness, inability to procure witnesses or other causes beyond the control of the party, no matter how appealing to the judicial discretion of the trial judge, no matter how weak the case may be against the defendant, all of these and other considerations must go for naught if this provision is valid, if we acknowledge the power of the legislature to thus direct an independent and co-ordinate branch of the State government the manner in which it shall perform its functions under the Constitution.    By legislative fiat the writ prayed for must be granted and the hands of the court are tied.

The judicial power, and all of it, is vested in the courts. The legislature may not exercise the judicial power or any fraction of it. Likewise the legislature may not deprive the judicial branch of the government of the exercise of judicial power or any fraction of it. If it may direct what orders the court must take it may by a parity of reasoning set aside orders made by the court which do not meet its approval. In Cooley's Constitutional Limitations (7th Ed.), p. 137, it is said:

"If the legislature cannot thus indirectly control the action of the courts, by requiring of them a construction of the law according to its own views, it is very plain it cannot do so directly, by setting aside their judgments, compelling them to grant new trials, ordering the discharge of offenders, or *directing what particular steps shall be taken in the progress of a judicial inquiry.*"

And in 6 R. C. L. p. 161, it is tersely stated:

"In determining whether a statute is invalid as a legislative assumption of judicial power, it is of importance to note whether, under the proceeding authorized by such statute, all questions of a judicial nature are left to the judgment of the courts."

The granting of a motion for a continuance is the performance of a judicial function. In granting or denying it the trial court exercises a judicial discretion and we have frequently held that such discretion will not be reviewed unless it has been abused. *McNaughton* v. *Evert*, 116 Mich. 141; *Winklemeir* v. *Daiber*, 92 Mich. 621; *People* v. *Eamaus*, 207 Mich. 442; *Kranich & Bach* v. *Lobell*, 227 Mich. 288. And the terms and conditions upon which it shall be granted must likewise rest in the sound judicial discretion of the trial judge. By the provision under consideration the exercise of this judicial discretion is taken from the trial judge and the legislature arrogates to itself to decide in advance in any and all

cases under the act upon what terms and conditions motions for continuances shall be granted. This is an assumption by the legislature of judicial power.

During the war of the Rebellion, the legislature of the State of Arkansas passed an act providing that all suits pending or thereafter brought should be continued "until after the ratification of peace between the United States and the Confederate States." In holding the act invalid as a usurpation of the judicial power by the legislature, it was said:

"Granting a continuance is either an exercise of judicial discretion upon particular facts, or an application of legal rules to them, the facts being ascertained by the courts, and the discretion used, or application of law made by the court; and in either case is exclusively a judicial act. A legislative act is an annunciation by the legislative authority that certain results shall follow particular actions or conditions; but the ascertainment of the act or condition and the application of the consequences belong to the courts.

"But by this law, the general assembly, from the fact of war existing between the United States and the Confederate States, has directed that all suits in law and equity in any of the courts of the State shall be continued till the war is ended, till the hostile nations have made a peace, till a treaty of peace shall be ratified. No fact is to be ascertained by the courts, no application of legal principle is to be made to the fact that the legislature has ascertained, but the courts, as registers of the legislative will, are to record its edict, closing indefinitely the temple of justice to all its suitors.

"This is not the manner in which courts exercise judicial functions, is not a proper subject, or legitimate use of legislative authority, inasmuch as the powers of the government of this State are divided by the constitution into distinct departments, each of which is confided to a separate magistracy: the legislative powers to the general assembly, the judicial powers to the judiciary." *Burt* v. *Williams*, 24 Ark. 91.

In *Mabry* v. *Baxter*, 11 Heisk. 682, the supreme

court of Tennessee, speaking through the Chief Justice, said:

"But in such judgment, it is not the judgment of the presiding judge — he is allowed no discretion whether the severance or the removal is to be allowed —he is commanded to give the judgments, and the exact judgments to be given are prescribed by the legislature. We are of opinion that these are judicial acts of the legislature."

In *Guy* v. *Hermance,* 5 Cal. 73 (63 Am. Dec. 85), it was said by the court:

"The legislature cannot exercise judicial functions, and therefore cannot except one case, or one party, from the operation of a general rule of law, either as to right or remedy. That portion therefore of the act of May, 1853, entitled, 'An act to provide for the sale of the interest of the State of California in the property within the water line,' etc., which prescribes that no injunction shall be issued against the commissions is invalid."

In considering the question of usurpation of the judicial power of the legislature, the supreme court of Alabama in *Weaver* v. *Lapsley,* 43 Ala. 224, speaking through the Chief Justice, said:

"These sections of said act, the second, third and fourth (the fifth having been already declared void by this court), are therefore void, because, in passing them, the legislature exercised judicial powers, in violation of the third article of the constitution. The security, as well as the harmony of the government, depends greatly upon each department thereof, conforming itself to the exercise of those powers properly assigned to it by the constitution; any invasions, therefore, of the powers that appropriately belong to either of the other departments, should be promptly met at the threshold, lest, by being repeated, they might seem to acquire the plausibility and force of a precedent. In such cases, for one, I am prepared to stand in the breach, and to 'bring forth the spear and stop the way.'"

A very able and exhaustive opinion dealing with the question of judicial power will be found in *Lawson* v. *Jeffries,* 47 Miss. 686 (12 Am. Rep. 342).    It was there said:

"If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary.    The evils that would flow from such an assertion of legislative power are too apparent to be enumerated, and need not be here undertaken."

But upon principle we are persuaded that the question is foreclosed in this court by *People* v. *De La Mater,* 213 Mich. 167.    In that case this court had before it the question of the constitutionality of section 25, Act No. 53, Pub. Acts 1919.    This section directed the magistrate to issue a search warrant upon filing with him an affidavit containing averments enumerated in the section.    We held that the section by its terms deprived the magistrate of the power to determine probable cause, a judicial power, and held the section invalid.    Here, as there, the legislature has dictated to the courts the action they shall take and the only action they may take, the order they shall make and the only order they may make.    This is a clear usurpation of the judicial power by the legislature.    This court has zealously guarded the other departments of the State government from encroachments on their powers, and we must as zealously guard the judicial department from encroachments upon its powers.    The provision under consideration is such encroachment and must fall, if the division of powers provided for in the Constitution is to be sustained.    Our duty is clear.    If provisions of an act of the legislature collide with the fundamental law, the fundamental law is supreme and the legislative provision must be declared a nullity.

But without this provision the act is workable.    The

courts, as in the past, will continue to exercise their judicial discretion in granting or refusing applications for continuances and in fixing terms and conditions upon which they will be granted.    We can not say that the legislature would not have passed the act had it not contained this provision.    We hold this provision invalid, and the balance of the act valid as against the objections here urged.

The decree should be vacated and the case remanded for such further proceedings as may be taken not inconsistent with this opinion.    No costs should be allowed.

BIRD and WIEST, JJ., concurred with FELLOWS, J.

SHARPE, J.    I cannot agree with Mr. Justice FELLOWS in the construction he places on the language of section 2 of the act.    The entire section reads:

"Whenever a nuisance is kept, maintained or exists, as defined in this act, the attorney general of the State of Michigan, the prosecuting attorney or any citizen of the county may maintain an action in chancery in the name of the State of Michigan, upon the relation of such attorney general, prosecuting attorney or citizen to perpetually enjoin said nuisance, the person or persons conducting or maintaining same, and the owner or agents of the building or place where said nuisance exists, or the vehicles by which any of the liquors mentioned in section one of this act are transported into or about the State.    Four days' notice in writing shall be given the defendant of the hearing of the application, and if then continued at his instance, the writ as prayed shall be granted as a matter of course.    When an injunction has been granted, it shall be binding on the defendant throughout the judicial circuit in which it was issued."

The first sentence is perfectly plain and easily understood.    The action is to be brought by the filing of a bill of complaint in chancery.    There is no provision for shortening the time for pleading.    Unless other-

wise provided, the suit will proceed to final hearing in the manner provided by the statute and rules of court. The second sentence provides for "Four days' notice in writing" to the defendant "of the hearing of the application." Application for what? That the meaning of this word, in the sense in which it is used, is not clear, is apparent. To construe it as applying to the relief to be granted on a final hearing would lead to an absurdity and result in such hardship and injustice to a defendant as cannot be presumed to have been intended. Under such a construction, a defendant must prepare himself to meet a charge of law violation which, if established, may result in the closing of his building and the sale of the property contained therein, in the four days of which notice has been given him. A careful reading of the second sentence of this section confirms this conclusion. It provides that after the four days' notice has been given, if the hearing be continued at the instance of the defendant, "the writ as prayed shall be granted as a matter of course." If the order or decree to be then made be a final one, there is nothing to continue, the hearing is at an end.

In all such cases a temporary injunction may be asked for when the bill is filed without special provision being made therefor. In my opinion, the only reasonable construction which can be placed upon the language used is to say that the "application" refers to one for a temporary injunction, and the writ to be issued, in the event of a continuance being asked for by defendant, is pursuant to an order providing therefor. I think this construction justified in view of the liberal rule which is followed by courts when construing such statutes. This rule was considered by Mr. Justice BROOKE in *Attorney General* v. *Railway,* 210 Mich. 227, wherein the authorities are reviewed at length. I quote therefrom (page 257):

228—Mich.—34.

"As was said by Chief Justice Shaw in *Commonwealth* v. *Kimball*, 24 Pick. (Mass.) 366, 370:

" 'When the words are not precise and clear, such construction will be adopted as shall appear most reasonable and best suited to accomplish the objects of the statute; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such conclusion.'

—and rather than pronounce a statute unconstitutional and void it is the duty of the court to—

'draw inferences from the evident intent of the legislature, as gathered from the law taken as a whole, supplying technical inaccuracies in expression and obviously unintentional mistakes and omissions by implication, from the necessity of making them operative and effectual as to specific things which are included in the broad and comprehensive terms and purposes of the law; and these inferences and implications are as much a part of the law as what is distinctly expressed therein.' *State* v. *Polk County Com'rs*, 87 Minn. 325, 337 (92 N. W. 216)."

As thus construed, the law is workable, and no apparent injustice will be done. The legislature may, if it so wishes, provide for a more speedy hearing on the merits or give precedence to such cases, as is done in tax matters.

No question of the exercise by the legislature of judicial power can then be presented. On the application for a temporary injunction, it must be made to appear that the violation complained of constitutes a nuisance. Of this fact the trial court must be satisfied by the sworn allegations in the bill and the affidavits attached thereto. The mere fact that the defendant asks for a continuance does not in itself entitle the plaintiff to the order for a temporary injunction. He must satisfy the court of the truth of the matters set up in the bill, and these must be such as, if proven, will justify a decree. The use of the word "shall" is not unusual in such statutes. The Kansas act, under consideration in *Mugler* v. *Kansas*, 123 U. S. 623 (8 Sup. Ct. 273), contained

a provision that "The injunction shall be granted at the commencement of the action, and no bond shall be required." In discussing this provision, Mr. Justice Harlan said:

"The statutory direction that an injunction issue at the commencement of the action is not to be construed as dispensing with such preliminary proof as is necessary to authorize an injunction pending the suit. The court is not to issue an injunction simply because one is asked, or because the charge is made that a common nuisance is maintained in violation of law. The statute leaves the court at liberty to give effect to the principle that an injunction will not be granted to restrain a nuisance, except upon clear and satisfactory evidence that one exists. Here the fact to be ascertained was, not whether a place, kept and maintained for purposes forbidden by the statute, was, *per se,* a nuisance—that fact being conclusively determined by the statute itself—but whether the place in question was so kept and maintained.

"If the proof upon that point is not full or sufficient, the court can refuse an injunction, or postpone action until the State first obtains the verdict of a jury in her favor."

In view of the fact that the defendant was forced to a trial at the time fixed in the notice, I am persuaded that the decree should be set aside and the cause remanded for a hearing upon the merits, which shall follow the practice provided therefor in suits in chancery in this State. The plaintiff may renew his application for a temporary injunction, pending such hearing, if he deem it necessary to do so. No costs of this court will be allowed.

CLARK, C. J., and MCDONALD, MOORE, and STEERE, JJ., concurred with SHARPE, J.