PRESSLEY *v.* WAYNE COUNTY SHERIFF

(PRESSLEY *v.* LUCAS)

Opinion of the Court

1. Bail—Bail Deposit Act—Misdemeanors—Traffic Offenses—
   Statutes.

   The 10% bail deposit act confers upon persons charged with
   the commission of traffic offenses and misdemeanors the right
   to post bail by depositing 10% of the amount of the bail, and
   precludes judges and others authorized to set bail from re-
   quiring that persons accused of such offenses furnish a surety
   bond (MCLA § 780.61 *et seq.*).

2. Bail—Bail Deposit Act—Misdemeanors—Traffic Offenses—
   Statutes.

   The 10% bail deposit act makes the 10% deposit the preferred
   means by which traffic offenders and misdemeanants furnish
   bond (MCLA § 780.61 *et seq.*).

3. Bail—Bail Deposit Act—Statutes—Discretion.

   The 10% bail deposit act by which traffic offenders and misde-
   meanants may furnish bond by depositing 10% of the amount
   of bail preserves to the judge the power to set the amount
   of bail, but deprives him of the power to prescribe the form
   of the bond or the security for its performance (MCLA § 780-
   .61 *et seq.*).

4. Bail—Bail Deposit Act—Misdemeanors—Traffic Offenses—
   Surety Bond—Statutes.

   A person accused of committing a traffic offense has an absolute
   statutory right to post bond under the 10% bail deposit act

References for Points in Headnotes

[1–4, 11–13] 8 Am Jur 2d, Bail and Recognizance § 84 *et seq.*
[4–13] 8 Am Jur 2d, Bail and Recognizance §§ 22, 23.
[5–8] 8 Am Jur 2d, Bail and Recognizance §§ 8, 9.
[9, 10, 14] 39 Am Jur, Parties §§ 44–54.
[15] 8 Am Jur 2d, Bail and Recognizance § 82.

and may not be required to furnish a surety bond (MCLA § 780.61 *et seq.*).

5. COURTS—RECORDER'S COURT—JURISDICTION—TRAFFIC OFFENSES.

The Recorder's Court of Detroit functions as a municipal court subject to the constitutionally-vested supervisory and general control power of the circuit court when it enforces a city ordinance (Const 1963, art 6, § 13).

6. COURTS—SUPREME COURT—POWERS—RULES OF PRACTICE.

Only the Supreme Court has the power to modify the provisions of a legislative enactment in the exercise of its power "by general rules [to] establish, modify and simplify the practice and procedure in all courts" (Const 1963, art 6, § 5).

7. COURTS—SEPARATION OF POWERS—CONSTITUTIONAL LAW.

The legislature may exercise a measure of control even as to a matter which affects fundamentally the daily operation of the courts, such as the power to assess costs and attorney fees, and the line between such permissible legislation and that which is an unwarranted interference with the judicial power does not lend itself to precise demarcation (Const 1963, art 6, § 1).

8. COURTS—BAIL DEPOSIT ACT—CONSTITUTIONAL LAW—SEPARATION OF POWERS.

The 10% bail deposit act does not constitute an impermissible intrusion upon inherent judicial power; *depriving a judge of the power to require that an offender charged with a traffic offense or misdemeanor furnish a surety willing to stand behind his undertaking does not interfere with the judge's performance in a judicial manner of the bail-setting function, nor does it erode the court's power to control judicial business* (MCLA § 760.81 *et seq.*).

9. PARTIES—CLASS ACTION—SPURIOUS CLASS ACTION.

A "spurious" class action may be maintained if the rights of the members of the class sought to be enforced are several and there is a common question of law or fact affecting the several rights and a common relief is sought, the persons claimed to be a class are so numerous as to make it impractical to bring them all before the court, and the persons who claim to represent the class will fairly insure its adequate representation (GCR 1963, 208.1[3]).

10. PARTIES—CLASS ACTION—SPURIOUS CLASS ACTION.

A class action is proper where defendant, charged with the violation of a city ordinance for operating a motor vehicle without an operating permit, seeks to compel the sheriff to release him under the 10% bail deposit act as well as to release of 50 to 60 other inmates of the Wayne County Jail in circumstances similar to his own, where the class fluctuates constantly both in size and identity of members, the class subjectively includes all persons who might be subjected to denial of bail under the 10% bail deposit act, the claim of each member might not warrant an action, all members of the class defendant represents are affected in a like manner by the actions he complains of, the issue is one that demands legal clarification, and the defendant can and has fairly insured adequate representation of the class.

DISSENT (IN PART) BY O'HARA, J.

11. BAIL—BAIL DEPOSIT ACT—DISCRETION.

*The whole thrust of the 10% bail deposit statute, including its object as contained in its title, vests judicial discretion to prescribe the kind, as well as the amount, of security required (MCLA § 780.61et seq.).*

12. BAIL—BAIL DEPOSIT ACT—DISCRETION.

*The 10% bail deposit act allows the judge in his discretion, to release the accused on his own recognizance, to require the accused to execute his own bond without surety or sureties, or to require the accused to execute the bond together with a surety, as the act defines the term (MCLA § 780.61 et seq.).*

13. BAIL—BAIL DEPOSIT ACT—BOND.

*An accused has an absolute right to bail by depositing 10% of the amount set if the judge either requires the accused to execute his own bond without a surety or sureties or requires the accused to execute the bond together with a surety, as the term is defined in the act.*

14. PARTIES—CLASS ACTION—SPURIOUS CLASS ACTION.

*A class action is proper where defendant, charged with the violation of a city ordinance for operating a motor vehicle without an operating permit, seeks to compel his release by the sheriff under the 10% bail deposit act as well as the release of 50 to 60 other inmates of the Wayne County Jail in circumstances similar to his own.*

15. BAIL—BAIL DEPOSIT ACT—SURETY—CONSTRUCTION OF STATUTES
    —DISCRETION.

> The term "one surety" as used in the 10% bail deposit act does
> not mean only a corporate professional surety but any finan-
> cially responsible person, and a policy enforced by judges of
> requiring a corporate professional surety would be an abuse
> of discretion (MCLA § 780.61 et seq.).

Appeal from Wayne, George T. Martin, J. Sub-
mitted Division 1 December 8, 1970, at Detroit.
(Docket No. 9992.)    Decided February 10, 1971.

Complaint by Kenneth Pressley, for himself and
all those similarly situated, against the Wayne
County Sheriff for mandamus.    Writ granted as to
Kenneth Pressley, and denied as to other members
of class.    Plaintiff appeals.    Writ affirmed as to
Kenneth Pressley and modified to include other
members of the class.

*Robert L. Reed* (Michigan Legal Services Assist-
ance Program) and *John Urso* (University of De-
troit Urban Law Clinic) (*Gary Sams* and *Mark
Barron* [Wayne County Neighborhood Legal Serv-
ices] of counsel), for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, *Dom-
inick R. Carnovale,* Chief, Appellate Department,
and *Aloysius J. Suchy, Samuel J. Torina* and *Rheo
C. Marchand,* Assistant Prosecuting Attorneys, for
defendant.

Before: LEVIN, P. J., and BRONSON and O'HARA*,
J.J.

---

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6, § 23 as amended in
1968.

Levin, P. J.  The plaintiff, Kenneth Pressley, commenced this action in the Wayne County Circuit Court claiming that he and other persons similarly situated had been deprived of the right to post bail under the 10% bail deposit act.[1]  Under that act, persons accused of committing traffic offenses and misdemeanors may post bail by depositing 10% of the amount of the bail set by the court and signing a bail bond.

Judges of the Traffic and Ordinance Division of the Recorder's Court of the City of Detroit take the position that they may deny particular offenders the benefit of the 10% bail deposit act by requiring that they furnish a surety bond.  They have instructed the sheriff of Wayne County, William Lucas, to refuse to accept 10% deposits in those cases where a judge has stipulated that a surety bond be furnished.

After a hearing the circuit judge entered an order directing Sheriff Lucas to release Pressley upon his depositing the 10% and signing the bail bond.  However, he refused to extend his order to include others "similarly situated".  Pressley appealed in the interest of the class.

We hold:

1. The 10% bail deposit act confers upon persons charged with the commission of traffic offenses and misdemeanors the right to post bail by depositing 10% of the amount of the bail, and precludes judges and others authorized to set bail from requiring that persons accused of such offenses furnish a surety bond.

2. The 10% bail deposit act does not infringe unconstitutionally upon inherent judicial power and, until the Supreme Court in the exercise of its exclu-

---

[1] PA 1966, No 257; MCLA § 780.61 *et seq.* (Stat Ann 1970 Cum Supp § 28.872[51] *et seq.*).

sive power to control practice and procedure rules otherwise, the provisions of the act govern.

3. The circuit judge should have extended the relief granted Pressley to the others in the class similarly situated.

## I.

Our statute is modeled on a 1963 Illinois statute.[2] A study of bail practices in the municipal court of Chicago had revealed that in the year 1962 professional bondsmen wrote bonds of $18,513,965, on which they were entitled to receive fees of $1,851,396 (10% of the bonds). The total amount of forfeitures collected from bondsmen in that year was $183,-938, *i.e.*, approximately 10% of the fees collected.[3]

The essence of the Illinois plan is that the accused person is allowed to deposit the 10% he would pay to the bondsman with the court at the time he executes the bond. If he complies with the conditions of the bond, there is to be returned to him 90% of the amount deposited—the average gross profit after forfeitures of the bondsmen; the remaining 10% is retained by the court. Since forfeitures in 1962 were 10% of the gross bond fees, the 10% retainage would, it was thought, produce revenue equal to the revenue received from forfeitures.

The Illinois plan was adopted on an experimental basis for two years. Although the ultimate objective of the plan was the elimination of professional bondsmen, during the two-year experimental period compensated sureties were permitted to continue to operate. The Illinois plan was successful in both reducing the jail population and in providing a fund

2 Illinois Laws 1963, § 110–1 *et seq.*, p 2836.
See Smith-Hurd Illinois Annotated Statutes, ch 38, § 110–1 *et seq.* for text of the currently effective statute.
3 Bowman, The Illinois Ten Per Cent Bail Deposit Provision, U of Ill L F 35, 36 (1965).

(the 90% to be returned to the accused person) out of which fines and other expenses of litigation could be paid; there was no attendant increase in jumps or forfeitures; and, principally because more accused persons were able to make bail, the 10% retainage produced more revenue than had been received from forfeitures.[4]

In 1965 the Illinois legislation was made permanent and, by amendment, the provisions of the act were made "exclusive of other provisions of law for the giving, taking, or enforcement of bail" thereby eliminating compensated sureties altogether in criminal cases.[5] Since 1965 professional bondsmen have been unable to operate in Illinois.[6]

---

[4] Oaks & Lehman, The Criminal Process of Cook County and the Indigent Defendant, U of Ill L Forum 584, 670–674 (1966); Boyle, Bail Under the Judicial Article, 17 De Paul L Rev 267, 274 et seq. (1968).

The amount of forfeitures depends in part on the enforcement policy of the court. The legislature recently enacted a law requiring the court to set aside forfeitures, within one year from the forfeiture judgment, if the person who jumped bail is apprehended "and the ends of justice have not been thwarted and the county has been repaid its costs for apprehending the person". PA 1970, No 226, MCLA § 765.15 (State Ann 1971 Curr Mat § 28.902).

[5] See Smith-Hurd Illinois Annotated Statutes, ch 38, § 110–15.

[6] See articles cited in fn 4.

The American Bar Association recently recommended the elimination of compensated sureties and that, in substitution, among other suggested alternatives, accused persons be required to deposit 10% of the amount of the bail. See American Bar Association Project on Minimal Standards for Criminal Justice, Standards Relating to Pretrial Release, §§ 5.3, 5.4. In the accompanying commentary it is observed (p 62):

"Where the bondsman writes bonds on credit and without collateral, no real risk of immediate financial loss deters the defendant from fleeing. The indemnity agreement usually required by the bondsman represents in these cases nothing more than the defendant's personal recognizance. The bondsman's practice has effectively negated the judge's bail setting, and the defendant might just as well have been released by the court on personal recognizance. Where the bondsman demands full collateral, he may frustrate the bail setting if the judge assumed that only the payment of a premium would be required. Where the bondsman absolutely refuses to write a bond no matter what the circumstances, the whole bail system is undermined."

Additionally, see Foote, The Coming Constitutional Crisis in Bail: Parts I and II, 113 U of Pa L Rev 959 (Part I), 1125 (Part II) (1965).

The Michigan statute, adopted in 1966, follows the Illinois statute verbatim, except (a) the Michigan statute is not exclusive, professional compensated sureties have not been prohibited; (b) the Michigan statute applies only to traffic offenses or misdemeanors while the Illinois statute applies to all offenses, including major felonies;[7] (c) in Michigan the minimum amount of the 10% bail deposit is $10, in Illinois it is $25;[8] (d) under the Michigan act the

---

[7] There is an exception under the Illinois act when death is a possible punishment and the proof is evident or the presumption great that the accused person is guilty; in such a case he has the burden of proving that he should be admitted to bail under the act. See Smith-Hurd Illinois Annotated Statutes, ch 38, § 110–4.

The Illinois Supreme Court in the implementation of other legislation by rule suspended the application of the statute as to some traffic and "quasi-criminal" offenses and certain misdemeanors. As to these offenses there is a schedule of fines and the offender must post an amount equal to the amount of the scheduled fine. Oaks & Lehman, The Criminal Process of Cook County and the Indigent Defendant, U of Ill Forum 584, 671 (1966); see Special Rule Concerning Procedures in Traffic Cases, Quasi-Criminal Cases and Certain Misdemeanors adopted by the Supreme Court of Illinois on December 3, 1963, effective January 1964, reprinted in ch 110, p 1571; subsequently the Court adopted, effective January 1, 1968, Article V of its rules relating to the same subject matter, which was most recently amended by order adopted and effective October 7, 1970. (The rules adopted effective January 1, 1968 are reprinted as Smith-Hurd Illinois Annotated Statutes, Ch 110A, § 501 et seq.) In many cases the accused person will not appear and the amount of the cash "bond" will be forfeited and no further proceedings will be taken to apprehend the offender.

In Illinois today a driver who is ticketed for a minor traffic offense is required to post bail "in the amount of $25 in one of the following ways:

(1) By depositing in lieu of such amount, his current Illinois driver's license; or (2) by depositing, in lieu of such amount, an approved bond certificate; or (3) by posting $25 cash bail." § 526, Part V of the Court Rules.

It may be that the purpose of the traffic and ordinance judges of the Recorder's Court is to effect the same convenience in administration of our traffic laws. For reasons stated in this opinion, we think that this is beyond their power and can be accomplished only by legislative modification of the statute or possibly by action, as in Illinois, by our Supreme Court. See Perin v. Peuler (On Rehearing 1964), 373 Mich 531, 541: "The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5.)" (Emphasis supplied.)

[8] MCLA § 780.66 (Stat Ann 1970 Cum Supp § 28.872[56]); Smith-Hurd Illinois Annotated Statutes, ch 38, § 110–7.

entire 10% deposit is required to be returned if the accused person is not convicted[9] while under the Illinois act only 90% is returned even if the accused person is acquitted.[10]

The remedial purpose of the act is apparent.[11]

## II.

In this case Kenneth Pressley was charged with the offense of operating a motor vehicle without an operating permit in violation of a City of Detroit

[9] MCLA § 780.66 (Stat Ann 1970 Cum Supp § 28.872[56].

[10] Smith-Hurd Illinois Annotated Statutes, ch 38, § 110–7.

[11] Section 2 of the act authorizes and encourages the judge to release the offender on his personal recognizance without the furnishing of any bail whatsoever.

Section 4 provides that if the judge decides to set bail it should be sufficient to assure compliance with the conditions of the bail bond, not oppressive, commensurate with the nature of the offense charged, considerate of the past criminal acts and conduct of the defendant and considerate of his financial ability and, where the offense is punishable by fine only, the amount shall not exceed double the maximum penalty and, when he has been convicted and only a fine imposed, double the amount of the fine. By amendment in 1969 (PA 1969, No 221, MCLA § 780.64 [Stat Ann 1970 Cum Supp § 28.872 (54)]) the amount set must be uniform whether the bail bond is executed by the accused person or by a surety.

Section 6 of the act provides that a person for whom bail has been set "shall execute the bail bond and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10% of the bail but at least $10". If the accused person is not convicted, the entire sum is required to be returned to him; if he is convicted 90% of the sum deposited is to be returned and 10% retained as "bail bond costs". The 90%, before its return, is to be applied to the payment of the judgment. MCLA § 780.66 (Stat Ann 1970 Cum Supp § 28.872[56]).

Section 7 provides: "In lieu of the bail deposit provided for in section 6 any person for whom bail has been set may execute the bail bond with or without sureties which bond may be secured" by the deposit of cash or stocks and bonds equal in value to the amount of the bail or unencumbered real estate equal in value to twice the amount of the bail. MCLA § 780.67 (Stat Ann 1970 Cum Supp § 28.872[57]).

"When bail has been set * * * any sheriff or other peace officer may take bail in accordance with the provisions of sections 6 or 7 and release the offender". MCLA § 780.68 (Stat Ann 1970 Cum Supp § 28.872[58]). Section 6 provides: "Upon depositing this sum [the 10%] the person shall be released from custody subject to the conditions of the bail bond." MCLA § 780.66 (Stat Ann 1970 Cum Supp § 28.872[56]).

ordinance.[12]   He pled not guilty when arraigned on July 2, 1970 and bail was set at $50, one surety. His trial date was set for September 22, 1970, 81 days after the arraignment.  The maximum penalty upon conviction of the offense is 90 days or a fine of $500, or both.[13]   Thus, if Pressley could not obtain a surety bond and was not permitted to post a 10% deposit, he would be required, while awaiting trial, to serve a sentence substantially equal to the maximum prison sentence the court could impose upon conviction.

It appears that professional sureties are generally unwilling to write small bonds because they are unprofitable—10% of $50 is $5.  In this context, it is manifest that the effect of imposing a one-surety requirement and of directing the clerk of the court and the sheriff to refuse to accept a 10% deposit is to deny bail altogether to precisely those persons intended to be benefitted by the 1966 legislation— economically disadvantaged, minor offenders.  (No doubt, bondsmen make exceptions and go surety on some small bonds, but that must be small comfort to the larger group who are unable to obtain this accommodation.)

In *People* v. *Ingram* (1966), 34 Ill 2d 623 (217 NE2d 803), the Supreme Court of Illinois rejected a challenge to the constitutionality of the Illinois act. It held that § 15 of the Illinois act (making that act exclusive of other provisions and thereby, in effect, barring compensated sureties in criminal cases) did not unconstitutionally discriminate against defendants in criminal cases because civil litigants who are required to post bond can continue to post a surety bond.  The Court further held that the provision of the Illinois act, corresponding to § 7 of our act, per-

---

[12] Detroit City Code, § 38–1–17.
[13] Detroit City Code, § 1–1–7.

mitting, in lieu of the 10% deposit, the furnishing of a bail bond with or without sureties, secured by a deposit of cash or stocks and bonds equal in value to the amount of the bail or unencumbered real estate equal in value to twice the amount of the bail,[14] was constitutional and that the complaining surety company must deposit security for the full amount of the bail.[15]

The Court declared:

"Requiring a bond with sufficient sureties is premised on the assumption that economic loss to the accused, his family or friends, will assure his appearance for trial. In actual practice, however, it is not the accused or his family who usually suffer the loss for nonappearance, but the professional bondsmen and insurance companies. If the accused employs a professional bondsman or insurance company to make his bond, he is required to pay the bond premium *regardless of his appearance or nonappearance* at trial. Hence, the economic loss deterrent loses force when an accused is admitted to bail with professional sureties, and the purpose of admitting persons to bail is frustrated.

"Experience has shown that the method of allowing a person to make bond with a professional surety does not accomplish the purpose of bail. (See Bowman, The Illinois Ten Per Cent Bail Deposit Provision, 1965 Ill L. Forum 35.) The legislature in section 110-8 has determined more is needed than

---

[14] This provision is intended to be used when the accused person does not have the 10% deposit and a friend or family member is willing to furnish collateral. It is designed, as appears from the decision of the Illinois Supreme Court in *Ingram*, for such personal accommodations and not for use by compensated sureties. See Oaks & Lehman, The Criminal Process of Cook County and the Indigent Defendant, U of Ill L Forum 584, 673, 674 (1966).

[15] The Illinois Supreme Court's ruling, in effect, eliminated compensated sureties because it is uneconomical for them to furnish full collateral to secure each bond that they write unless they can obtain the collateral from the offender himself. But, if he has collateral, he can deposit it himself without compensating the surety for acting as a conduit.

the mere ability to pay bail bond forfeitures on a
business basis. (See Committee Comments, Smith-
Hurd Ill Anno Stat pp 145–149.) We are of the
opinion that the alternative methods of bail provided
in sections 110-7[16] and 110-8[17] do not violate the con-
stitutional provision that all persons shall be bail-
able by 'sufficient sureties'." *People* v. *Ingram,
supra,* p 626. (Emphasis by the Court.)

The Michigan act, like the Illinois act, makes no
provision for uncollaterallized surety bonds.[18] We
are satisfied that the plain meaning of the 10% bail
deposit act is that the 10% deposit shall be the pre-
ferred means by which traffic offenders and misde-
meanants furnish bail. Alternatively, they may, if
they wish, "in lieu" of the 10% deposit, furnish a
collaterallized bond with or without sureties. It is
completely inconsistent with the statutory scheme
for a judge or other officer authorized to set bail to
require a surety bond instead of a bond filed under
the act. The act preserves to the judge the power
to set the amount of bail, but deprives him of the
power to prescribe the form of the bond or the secu-
rity for its performance.

---

[16] Section 6 of the Michigan act corresponds to this section of
the Illinois act.

[17] Section 7 of the Michigan act corresponds to this section of
the Illinois act.

[18] In Michigan, accused persons may, however, continue to furnish
a surety bond under previously enacted legislation. We are persuaded
to this view because that is how the Illinois act was intended to
operate during the two-year trial period before it was made exclusive
of other legislation. See Oaks & Lehman, The Criminal Process of
Cook County and the Indigent Defendant, U of Ill L Forum 584,
670 (1966). The Michigan act, although closely following the Illinois
act, does not contain the provision added to the Illinois act (see
fn 5) when it was made permanent legislation making it exclusive
of other provisions of law.

We are advised that during the two-year experimental period, be-
fore the Illinois 10% bail deposit act was made exclusive, it was
understood to be mandatory, and not directory, in the sense that
offenders, not the court, had the right to decide whether to post bail
under the act or to furnish a surety bond.

The Michigan legislature made perfectly clear its intention that those who set bail may not by indirection defeat the 10% deposit plan when in 1969 it amended the 1966 act to provide that the amount of bail shall be "uniform whether the bail bond be executed by the person for whom bail has been set or by a surety".

We hold that a person accused of committing a traffic offense or a misdemeanor has an absolute statutory right to post bail under the 10% bail deposit act and that he may not be required to furnish a surety bond.

## III.

The jurisdiction of the Recorder's Court extends to violations of both city ordinances and state law. It functions as a municipal court, and is an "inferior court" subject to the constitutionally-vested supervisory and general control power of the circuit court (Const 1963, art 6, § 13), when it enforces a city ordinance. But it is a co-equal court, free of such control, when it functions as a state court enforcing state law.[19]

Pressley was held to answer a charge of violating a city ordinance. Clearly the traffic and ordinance division was sitting as a municipal court when it set bail in his case.

The relief prayed for in this case does not require the issuance of a writ of superintending control directed to a judge or judges of the Recorder's Court.[20] The plaintiff asks, rather, that a writ of

[19] *City of Detroit* v. *Wayne Circuit Judge* (1925), 233 Mich 356.

[20] *Morcom* v. *Recorder's Court Judges* (1968), 15 Mich App 358, is not in point. In *Morcom* we ruled that GCR 1963, 711, as amended, does not confer on our Court superintending control over the general practices of the trial courts or of any judge. In so holding, we observed that Const 1963, art 6, § 4, confers on the Supreme Court general superintending control over all courts and that § 13 of that article confers on the circuit court supervisory and general control over courts and tribunals inferior to the circuit court in accordance

mandamus issue to the Wayne County Sheriff who, under the act, is required to accept bail bonds and 10% deposits and release from custody prisoners who so make bail without regard to whether they are charged under a city ordinance or state law.[21]

## IV.

In considering the constitutionality of the elimination of judicial discretion to require a surety bond, we must distinguish between questions arising under § 1 and under § 5 of the judicial article, art 6, of the 1963 Constitution.

The 10% bail deposit act, in depriving judges of the power to require a surety bond, does not, in our opinion, violate § 1, which vests the "judicial power of the state" in the courts of the state established under or pursuant to the Constitution.

To the extent that the setting of bail may be an aspect of "practice and procedure" the Supreme Court might modify the provisions of the legislative enactment in the exercise of its power "by general rules [to] establish, modify and simplify the practice and procedure in all courts". Const 1963, art 6, § 5. No other court, only the Supreme Court, enjoys that power.

A considerable body of statutory law regulates and channels the exercise of judicial power. The statutory provisions regarding the jurisdiction of courts, the manner of commencing and prosecuting suits and enforcing judgments, all guide, organize

with the rules of the Supreme Court. While, as held in *Morcom,* we do not have the power to entertain a complaint filed in our Court seeking the issuance of a writ of superintending control concerning the general practices of trial courts or judges, as an appellate court we have the power to review an order of a circuit court in an action seeking the issuance of an order directed to the Sheriff of Wayne County.

[21] See MCLA § 780.68 (Stat Ann 1970 Cum Supp § 28.872[58]) quoted in part in fn 11.

and control, in varying degrees, the judicial function. Statutes which create a right or impose a duty and look to the courts to adjudicate controversies, as well as those which speak directly to points of substantive and procedural law, in a sense impinge upon judicial power.

Recently in *City of Muskegon* v. *Slater* (1967), 379 Mich 466, 473, a majority of our Supreme Court declared: "A complete revision and overhaul of the amount and power to assess costs and attorney fees in all Michigan courts is overdue" and that the remedy was for the legislature to place responsibility for costs and attorney fees with the Supreme Court by amending the Revised Judicature Act to provide that the Supreme Court shall adopt rules for the taxation or imposition of costs and the allowance of attorney fees. The Court concluded that "the deletion of legislative authority" from the Revised Judicature Act would permit a uniform approach under the court rules. Implicit in this statement is the Court's acknowledgment that even as to a matter which affects fundamentally the daily operation of the courts, as does the power to assess costs and attorney fees, the legislature may exercise a measure of control.[22]

Some legislative enactments have, indeed, been viewed as an unwarranted interference with the judicial power.[23] The line between one and the other

---

[22] Similarly, see *Mason* v. *Phelps* (1882), 48 Mich 126, 127; *Eddy* v. *Township of Lee* (1888), 73 Mich 123, 129; *Smedley* v. *Soule* (1900), 125 Mich 192, 199; *People, ex rel. Attorney General,* v. *Donovan* (1924), 228 Mich 520 (three justices dissenting); *People* v. *Piasecki* (1952), 333 Mich 122, 148.

[23] *Bielecki* v. *United Trucking Service* (1929), 247 Mich 661, 665–667; *People* v. *Holschuh* (1926), 235 Mich 272, 275; *cf. Harker* v. *Bushouse* (1931), 254 Mich 187, 192, with *Darr* v. *Buckley* (1959), 355 Mich 392, 396; *cf.* 382 Mich xxxii, modifying PA 1967, No 263, MCLA § 600.2166 (Stat Ann 1970 Cum Supp § 27A.2166 [dead man's statute]) with *Mallery* v. *Van Hoeven* (1952), 332 Mich 561, 566; *Gray* v. *Clerk of the Common Pleas Court* (1962), 366 Mich 588, 594, 595; *In re White* (1954), 340 Mich 140, 149.

does not lend itself to precise demarcation. In reaching a judgment, case by case, we seek to distinguish between details and fundamentals.

The setting of bail has for a long time been regulated largely by statute.[24] Whether this is a judicial function need not detain us.[25] Even if it is a judicial function, depriving judges of the power to require that the offender furnish a surety willing to stand behind his undertaking does not interfere with their performance in a judicial manner of the bail-setting function.

Nor does the 10% bail deposit act significantly erode the court's power to control judicial business. All persons charged with a traffic offense or a misdemeanor are entitled to be released on reasonable bail. It is not permissible to deny bail, directly or indirectly. What empirical data there are indicate that offenders released on 10% bail deposit bonds are not less likely to appear than those released on surety bonds.[26]

---

[24] See MCLA § 765.1 *et seq.* (Stat Ann 1954 Rev § 28.888 *et seq.*) and historical note at p 133; MCLA § 726.14 (Stat Ann 1962 Rev § 27.3564); MCLA § 780.581 (Stat Ann 1970 Cum Supp § 28.872[1]).

The origin of the bail practice is probably administrative; sheriffs on their own initiative released prisoners, but were personally answerable if the prisoner did not appear. The practice was then regulated by statute, and when the king, nevertheless, detained accused persons both Parliament and the courts, after awhile, acted. See Foote, The Coming Constitutional Crisis in Bail: I, 113 U of Pa L Rev 959, 965; Ehrlich's Blackstone, pp 899–901; Commentaries on the Law, Book IV, ch XXII.

[25] While judges set bail, it appears that the power may be conferred on nonjudicial officers. See *Daniels* v. *People* (1859), 6 Mich 381, 388, 390; *In re Sanderson* (1939), 289 Mich 165, 169.

Blackstone reported that "bail may be taken either in court or in some particular cases by the sheriff, coroner or other magistrate, but most usually by the justices of the peace", that at ancient common law all offenses were bailable, but that by statute certain offenses of "a very enormous nature", *e.g.*, treason, murder and some felonies were not bailable or were bailable only in the discretion of the magistrate, but that the Court of Kings Bench "may bail for any crime whatsoever". Ehrlich's Blackstone, pp 899–901; Commentaries on the Law, Book IV, ch XXII.

[26] See Boyle, Bail Under the Judicial Article, 17 De Paul L Rev 267, 274, 275 (1968); Bowman, The Illinois Ten Per Cent Bail Deposit

This legislation, designed to ameliorate conditions which deprive poor persons of their constitutional right to be released on reasonable bail, does not constitute an impermissible intrusion upon inherent judicial power.

The Supreme Court may, in the exercise of its ultimate responsibility of deciding questions of practice and procedure, restore to trial judges the power to require a surety bond. But until the Supreme Court so decrees, the judges of all courts, trial judges and judges of this Court alike, and all others authorized to set bail, are bound to accord the legislative judgment the respect that we give a constitutional law.

In this connection we note that the Michigan Supreme Court has indicated its approval of the challenged legislation by its adoption of DCR 2004 which expressly requires that bail be set in the district courts in accordance with the provisions of the 10% bail deposit act.[27] It would, therefore, appear that the Supreme Court does not regard the act to be an intrusion upon inherent judicial power.[28]

---

Provision, U of Ill L Forum 35, 39 (1965); Oaks & Lehman, The Criminal Process of Cook County and the Indigent Defendant, U of Ill L Forum 584, 672 (1966); Foote, The Coming Constitutional Crisis in Bail: II, 113 U of Pa L Rev 1125, 1162, 1167.

We are advised that the forfeiture experience in Chicago and in Cook County in 1969 and 1970 is comparable to the favorable experience in earlier years; as to the experience in earlier years see the first three articles cited in this footnote.

[27] DCR 2004 provides:

"Bail for persons arrested for or accused of criminal offenses involving traffic offenses or misdemeanors will be set solely for the purpose of assuring the appearance of the defendant in court for a scheduled arraignment time and is therefore not to be construed in any way as a form of punishment; and, provision for bail of persons arrested for or accused of criminal offenses involving traffic offenses or misdemeanors shall be made in accordance with the conditions and intent of PA 1966, No 257."

[28] That no distinction can properly be drawn between legislatively established and constitutionally provided courts as to their fundamental integrants, see In re White (1954), 340 Mich 140, 149.

The power to release on bail came into being as a check on the power to hold a citizen before trial.[29] In light of that history, the judiciary should be slow to superimpose requirements which would impede the full implementation of legislation providing a more equitable means of obtaining release on bail. It would, however, be entirely consistent with the statutory and constitutional protection afforded the right to be released upon furnishing reasonable bail and within the prerogative of the Supreme Court under Const 1963, art 6, § 5 for the Court to extend the 10% bail deposit concept to include, as in Illinois, persons accused of the commission of felonies.[30]

## V.

Pressley commenced this action "for himself and all those similarly situated". The circuit judge issued the writ, but refused to extend it to include other persons denied the right to post a 10% deposit. In this we think he erred.

Our court rule concerning class actions, GCR 1963, 208 is modeled on the Federal rule as it read before its recent amendment.[31] Whether the class action is "true", "hybrid" or "spurious", it may be maintained only if the persons claimed to be a class "are so numerous as to make it impracticable to bring them all before the court" and the persons who claim to represent the class "will fairly insure [its] adequate representation".

In the spurious class action—and this is the category into which Pressley's claim falls—the rights of

[29] Bail: An Ancient Practice Reexamined, 70 Yale L J 966 (1961); Foote, The Coming Constitutional Crisis in Bail: I, 113 U of Pa L Rev 959, 966 (1965).

[30] See articles cited in fn 26 for a report on the Illinois experience.

[31] The Federal Rule, Fed Rules Civ Proc, 23, was amended in 1966 to eliminate the tripartite classification and to substitute in its place a functional classification.

the members of the class sought to be enforced are "several", as contrasted with "joint" (the "true" class action),[32] and there is a "common question of law or fact affecting the several rights and a common relief is sought". GCR 1963, 208.1(3).

It has been said that:

"The class action was an invention of equity [citation omitted], mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." *Montgomery Ward & Co., Inc.* v. *Langer* (CA 8, 1948), 168 F2d 182, 187.

The United States Supreme Court, in an early case, *Smith* v. *Swormstedt* (1853), 57 US (16 How) 288, 303 (14 L Ed 942, 948), in language frequently quoted, including by our Supreme Court,[33] observed:

"Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court."

In a number of cases the Michigan Supreme Court has recognized that class actions are an appropriate

---

[32] In the true class action (GCR 1963, 208.1[1]) the plaintiff seeks to enforce a joint right and, in the hybrid action, a several right involving the adjudication of claims concerning specific property (GCR 1963, ·208.1[2]). The spurious class action (GCR 1963, 208.1[3]) has frequently been referred to as a "permissive joinder device".

[33] *City of Detroit* v. *Detroit United Railway* (1924), 226 Mich 354; *American State Savings Bank, Trustee,* v. *American State Savings Bank* (1939), 288 Mich 78, 85, 86.

procedural device where there are numerous members of the class and common questions of law or fact affect their rights and common relief is sought.[34]

Recently in *Bond* v. *Ann Arbor School District* (1970), 383 Mich 693, 702, the Court observed:

"It is in the very nature of a class action that the claim of each individual member of the class action may be such as to alone scarcely warrant pursuit of repayment. * * * This situation was one peculiarly adapted to a class suit. The claim of each member of the class alone did not warrant an action, all members were affected in like manner by the action of defendant, and the issue was one that demanded legal clarification."

The United States Court of Appeals for the Second Circuit similarly observed:

"Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." *Eisen* v. *Carlisle & Jacquelin* (CA 2, 1968), 391 F2d 555, 560.

In the present case the numerousness criterion, as it has evolved, is met. It is now recognized that "in addition to mere numbers other factors, such as the instability of the group and the whereabouts of its members, should be weighed in determining whether it is 'impracticable to bring them all before the court'." James, Civil Procedure, pp 498, 499.

Pressley alleges that there are 50 to 60 inmates of the Wayne County Jail in circumstances similar to

---

[34] *Locke* v. *City of Detroit* (1952), 335 Mich 29, 34; *Dipboye* v. *Acchione* (1958), 351 Mich 550; *American State Savings Bank, Trustee,* v. *American State Savings Bank, supra.*

his own. The class fluctuates constantly both in size and identity of members. The class, in a larger sense, includes all persons who might be subjected to the practices against which this litigation is aimed.

As in *Ann Arbor School District,* the claim of each member of the class might not warrant an action; surely the attorneys representing Pressley would have found it simpler to obtain a $50 surety bond than to commence and prosecute this litigation. All members of the class Pressley represents are affected in like manner by the actions he complains of and the issue is one that demands legal clarification.

The adaptation of the class action to the protection of the rights of indigent accused persons is a sensible extension of this procedural device which was fashioned in equity to assure that important rights would not go unvindicated. In *Adderly* v. *Wainwright* (MD Fla, 1968), 46 FRD 97, the court ruled that habeas corpus applicants attacking the Florida death penalty in capital cases could maintain a class action. There were in excess of 50 prisoners in the class sought to be represented but, as here, the size of the class was subject to constant fluctuations. The court declared that both the size of the class sought to be represented and its lack of stability made joinder of all members impracticable. There were common questions of law and fact involving the death penalty and Florida's practice in capital cases. The coincidence of the interests of the representatives and the other members of the class was thought to insure that the interest of the class would be adequately and fairly protected by the representative parties. The court declared:

"[T]he class action device is 'superior' to other methods for the 'fair and efficient adjudication' of the claims. It eliminates burdensome duplication in

what would be essentially identical individual peti-
tions.  It eliminates the problem of appointment of
attorneys to serve without fee for more than fifty
prisoners.  It would avoid the risk of prejudice to
'functionally illiterate' prisoners which might result
from requiring each to correspond and deal with an
individual attorney, as many prisoners, as well as
individual counsel, might find such correspondence
difficult and confusing."

In *Jackson* v. *Bishop* (CA 8, 1968), 404 F2d 571,
the United States Court of Appeals for the Eighth
Circuit affirmed a decision of a panel of district
judges[35] and ruled that three inmates of an Arkansas
penitentiary could maintain a class action seeking
to bar the use of the strap and other devices as dis-
ciplinary measures in Arkansas penal institutions.

In *Anderson* v. *Ellington* (MD Tenn, 1969), 300 F
Supp 789, an inmate of a county workhouse chal-
lenged the Tennessee practice of imposing an addi-
tional period of confinement to "work off costs" for
those unable to pay.  A three-judge court ruled that
the complaint adequately defined a class of indigent
persons who were imprisoned because of their fail-
ure to pay costs, that the plaintiff was a proper rep-
resentative of the class and that he could maintain
a class action.

We are satisfied that Pressley can and has fairly
insured adequate representation of the class.  See
*Eisen* v. *Carlisle & Jacquelin, supra,* pp 562, 563.
The fact that he has obtained relief for himself does
not bar his continuing to prosecute the action for
the benefit of the other plaintiffs (the other members
of the class) that were denied relief.[36]  Five lawyers

---

[35] See *Jackson* v. *Bishop* (ED Ark, 1967), 268 F Supp 804.

[36] *Cf. Washington* v. *Lee* (MD Ala, 1966), 263 F Supp 327; *Rackley*
v. *Board of Trustees of Orangeburg Regional Hospital* (ED SC, 1965),
238 F Supp 512.

joined in bringing the present action. They are from three different legal service programs, the University of Detroit Urban Law Clinic, the Wayne County Neighborhood Legal Services and the Michigan Legal Services Assistance Program. The only factor differentiating Pressley from the others claimed to be similarly situated is the amount of bail set. The legal issue, whether Sheriff Lucas had a clear duty to release Pressley and other members of the class upon deposit of 10% of the bail set and signing of the bail bond, is the same.

The order entered by the trial court is hereby modified, effective upon issuance of this opinion (GCR 1963, 820.1[7]; 821.2), to require that the defendant, Sheriff Lucas, release from custody all persons now or hereafter entrusted to his custody charged with committing a traffic offense or a misdemeanor upon their depositing 10% of the bail set (but at least $10) and the signing by the accused person of a bail bond in the manner provided in the 10% bail deposit act; the accused person shall not be required to furnish a surety bond.

No costs, a public question.


Bronson, J., concurred.


O'Hara, J. (*dissenting in part*). Judge Levin reaches the result which I deeply wish I could reach also. It is socially desirable and perhaps urgently needed.

My only difficulty is that I cannot, in effect, amend a statute by interpreting it as I think the legislature should have enacted it.

The precise point over which Judge Levin and I divide is the nature of the duty and the responsibility which I believe the involved statute imposes

upon the judge and the judicial discretion which it vests in him.

My esteemed colleague reads the statute to mean that the only function of the judge is to set the *amount* of the bail. Then, and thereupon, he concludes the accused has a *right* to deposit ten percent of that amount with the clerk of the court (not less than $10), or alternatively with any sheriff or other peace officer, and be released *instanter*.

To me the whole thrust of the statute, including its object as contained in its title, imports a further judicial responsibility. The title of the act, as is constitutionally required, prescribes the "kind" as well as "the amount of security required".

Surely it is difficult to read out of this unequivocal language the right of the judge to require a surety. To do so renders nugatory the definition of "surety" which the statute contains.

Thus, it is my conclusion that under this statute the judge may in his discretion: (1) release the accused upon his own recognizance; (2) require the accused to execute his own bond without a surety or sureties; or (3) require the accused to execute the bond together with a surety, as that term is defined in the act.

When, and if, either of the latter two conditions is fulfilled, then, and in that event, I agree with my colleague that the accused has an absolute right to deposit the ten percent with the clerk, sheriff, or other peace officer who is restraining him, and thereupon be entitled to release as the statute clearly provides. It is not for us in the judiciary to amend it by "interpretation". It would take about five minutes of legislative time to amend the act to permit the result Judge LEVIN's opinion authorizes. That is what was done in Illinois; that, if our legis-

lature chooses to do so, is what should be done in Michigan.

I am not troubled by the objection that this is not a proper class action. I hold with Judge Levin that it is.

Normally, this much is all I believe should be written. I cannot close my eyes to the claim that all the judges of the Traffic and Ordinance Division of the Recorder's Court have adopted and do enforce an undeviating policy of requiring a professional surety in the nature of a corporate bonding company in every case in which a bond with a surety is required.

Unfortunately, I have no settled record before me which either affirms or denies this contention. Because of the pressing nature of the problem I shall do what I dislike to do, and commit myself judicially upon a hypothesis for decisional purpose.

I hold that if the term "one surety" means in the Traffic and Ordinance Division a corporate professional surety, such meaning is a clear abuse of the very judicial discretion, the exercise of which I write to uphold. A "surety" as I read the statute may be any financially responsible person.

I would modify Judge Martin's order to hold that when the conditions of setting bond in any one of the methods permitted by statute are followed, the deposit of ten percent thereof entitles an accused to his release.

Since my opinion herein is a minority holding, I cannot, of course, impose its rationale on the Traffic and Ordinance Division. At least the judges of that court are aware of my judicial attitude toward a practice that, it is represented to us without factual support, obtains in their court.

Were I in the majority, I would hold further that the judges of the involved court be authorized to

intervene herein to the extent of supplying this panel with a duly authenticated abstract from their records establishing what, in fact, the practice in their court really is.

Because the point is neither raised nor briefed, I do not address myself to the question of whether or not the whole matter of the fixing of bail is not indeed procedural and thus a judicial function reserved by the constitution to the Supreme Court.

If defendant herein has furnished bond in the manner required by statute as I have outlined it herein, upon deposit of ten percent thereof he is entitled to be released, as are all those similarly situated under the class action. Failing such release, *mandamus* should issue.

No costs.